In the Matter of the Judicial Settlement of the Account of D. McLeod Gawne, as Sole Surviving Executor, etc., of Ellen O'Reilly, Deceased.

Mary E. Reilly, Appellant; Edward A. Reilly, Respondent.

*Will — a gift "to my son Edward A. Reilly one equal one-fifth part in trust for his wife Mary E. Reilly" held to convey an absolute estate to the wife.*

A testatrix, by the 2d clause of her will, gave her estate, both real and personal, to her executors in trust to keep the principal thereof invested during the life of her husband and to pay him the income as long as he should live. The 3d clause of the will provided as follows: "*Third.* It is my will and I hereby direct that upon the death of my said husband, James O'Reilly, my surviving executor shall divide the principal sum of my estate among my sons, James T. Reilly, William F. Reilly, Edward A. Reilly, and my adopted sons William O'Reilly and Franklyn O'Reilly, children of Franklyn Fletcher, and legally adopted by my husband and myself in manner following, that is to say: to my son James T. Reilly one equal one-fifth part; to my son William F. Reilly one equal one-fifth part in trust for his wife Sarah A. Reilly; *to my son Edward A. Reilly one equal one-fifth part in trust for his wife Mary E. Reilly;* to my adopted son William O'Reilly one equal one-fifth part and to my adopted son Franklyn O'Reilly one equal one-fifth part."

*Held,* with respect to the share given to the testatrix's son Edward in trust for his wife, that only a passive trust could be spelled out of the will, and that consequently Edward did not take any estate in such share, but that it belonged solely and absolutely to his wife.

Appeal by Mary E. Reilly from so much of a decree of the Surrogate's Court of Kings county, entered in said Surrogate's Court on the 23d day of September, 1902, settling the accounts of the executor of the will of Ellen O'Reilly, deceased, as construes the 3d clause of said will.

*Albert R. Moore,* for the appellant.

*Henry A. Forster,* for the respondent.

Goodrich, P. J.:

This appeal requires the construction of the 3d clause of the will of Ellen O'Reilly, deceased. By the 2d clause she gave her estate, real and personal, to her executors, with power to transfer or sell the same, in trust to keep the principal invested during the life of her

husband and to pay him the income as long as he should live. The 3d clause of the will reads as follows:

"*Third.* It is my will and I hereby direct that upon the death of my said husband, James O'Reilly, my surviving executor shall divide the principal sum of my estate among my sons, James T. Reilly, William F. Reilly, Edward A. Reilly, and my adopted sons William O'Reilly and Franklyn O'Reilly, children of Franklyn Fletcher, and legally adopted by my husband and myself in manner following, that is to say: to my son James T. Reilly one equal one-fifth part; to my son William F. Reilly one equal one-fifth part in trust for his wife Sarah A. Reilly; *to my son Edward A. Reilly one equal one-fifth part in trust for his wife Mary E. Reilly;* to my adopted son William O'Reilly one equal one-fifth part and to my adopted son Franklyn O'Reilly one equal one-fifth part."

The question to be determined is whether Edward or his wife, Mary, was vested by the will with the one-fifth part of the estate on the death of the testatrix's husband. The learned surrogate held that the share was bequeathed to Edward, saying: "The fact that in the third clause of the will the bequest to Edward A. Reilly is followed by the words 'in trust for his wife Mary E. Reilly' is, in my judgment, not sufficient to destroy such bequest or to impress it with a trust. In order to constitute a trust it is not sufficient to name a beneficiary; the object, terms and conditions must also be stated."

It is necessary first to ascertain the intention of the testatrix derivable within the four corners of the will. There is no other evidence of the circumstances or situation of the parties. So far as we can gather from the language of the will, the testatrix had five sons, two of whom, William and Edward, were married. The executor was directed, upon the death of the husband of the testatrix, to "divide the principal sum of my estate among my sons, (naming them) * * * in manner following, that is to say:" to the three unmarried sons "one equal one-fifth part" each, "to my son William F. Reilly, one equal one-fifth part in trust for his wife Sarah A. Reilly; to my son Edward A. Reilly, one equal one-fifth part in trust for his wife Mary E. Reilly."

It is contended by the respondent that where an absolute estate is given in one part of a will in clear and decisive terms it cannot

be taken away or cut down by subsequent words which are not as clear and decisive as the words creating the estate. But there are no words creating an absolute bequest of the one-fifth part to Edward, for the language of the will is to divide the estate among the sons "in manner following," and that manner is stated as to Edward to be in trust for his wife, utterly unlike the bequest to each of the three unmarried sons. Evidently the testatrix intended to, and did, make a difference in the destination of the one-fifth parts. Three of them she bequeathed directly, one to each of the three unmarried sons, while she bequeathed the other two shares one to each of the married sons in trust for his wife. The reason for such change in the phraseology does not appear, save as it may be inferred from the fact that three were married and the other two were single. This is not sufficient to lead us to force a construction of exact equality in the method of devolution among the children, and, as we may not make a new will for the testatrix, we must resort to the statutes and to authoritative construction placed upon such a will.

The Personal Property Law (Laws of 1897, chap. 417, § 2) provides that the absolute ownership of personal property shall not be suspended by any limitation or condition for a longer period than during the continuance of two lives in being, etc., and that " in other respects limitations of future or contingent interests in personal property are subject to the rules prescribed in relation to future estates in real property."

Section 73 of the Real Property Law (Laws of 1896, chap. 547), which is identical with section 49 of title 2 of chapter 1 of part 2 of the Revised Statutes (1 R. S. 728), reads in part: " Every disposition of real property, whether by deed or by devise, shall be made directly to the person in whom the right to the possession and profits is intended to be vested, and not to another to the use of, or in trust for, such person; and if made to any person to the use of, or in trust for another, no estate or interest, legal or equitable, vests in the trustee."

In the introduction of Chaplin on Express Trusts and Powers (p. 5), the author quotes the report of the statute revisers in relation to trusts, in which it is said : " There are three classes of trusts, each requiring to be noticed: 1. Where the trustee has only a naked and formal title and the whole beneficial interest or right in equity

to the possession and profits is vested in those for whose benefit the trust is created. * * * As to the first class or formal trusts it is plainly needless to retain them. They separate the legal and equitable estate for no purpose that the law ought to sanction. * * * Formal trusts we, therefore, propose to abolish by converting those which now exist into legal estates and prohibiting their creation in future."

In the case at bar the will contained a limitation of a future interest in personal property to Edward in trust for his wife upon and after the expiration of the trust to pay the income to the husband of the testatrix, and this by the Personal Property Law is subject to the rules prescribed as to future estates by the Real Property Law.

In Perry on Trusts (Vol. 1 [5th ed.], § 18) it is said : " Trusts are divided into simple and special trusts. A simple trust is a simple conveyance of property to one upon trust for another without further specifications or directions. In such case the law regulates the trust and the *cestui que trust* has the right of possession and of disposing of the property, and he may call upon the trustee to execute such conveyances of the legal estate as are necessary."

In *Rawson* v. *Lampman* (5 N. Y. 456), decided in 1851 and before the passage of the Real Property Law, it was held, under sections 47 and 49 of title 2 of chapter 1 of part 2 of the Revised Statutes (1 R. S. 727, 728), entitled " Of Uses and Trusts," which correspond to sections 72 and 73 respectively of the Real Property Law, that where a conveyance of lands is made to one person in trust for the use and benefit of another, his heirs and assigns, without limitation, no interest vests in the trustee, but the entire estate, legal and equitable, vests in the person to whose use the conveyance is made. That case was cited in *Fisher* v. *Hall* (41 N. Y. 416) in connection with a will which gave to the testator's son " George, in trust and for the use of his children and their heirs, * * * reserving the income of the above property for the benefit of my son George and his children during his natural life." The court held : " The testator attempted to create a mere passive trust which the laws of this State did not at that time allow to be done. The property, therefore, became vested under the statute in the son of the testator and his children as tenants in common."

Judge LAWRENCE, in a very careful and instructive opinion at Special Term, in *Moorehouse* v. *Hutchinson* (17 N. Y. St. Repr. 181) reviewed the authorities and construed a will, the 7th paragraph of which gave all the property of the testator to his wife and directed that after her death it should be equally divided among his five children, with the words, "the interest of my two daughters devised to them under this will to Alcander Hutchinson in trust for their sole and separate use." He said (p. 184) : "The grantee, Alcander Hutchinson, has no power to do anything. He is not to receive the rents, issues or profits of the share intended for Mrs. Moorehouse, nor of that of her sister. He is not to apply them to their use or maintenance. I cannot but conclude, therefore, that the alleged trust created in the seventh clause of the will is a mere passive trust, and therefore void." This case, so far as I can ascertain, has never been questioned.

A fair test of the question whether or not there is a trust in the case at bar is whether there is any trust which can be enforced. Counsel for the respondent says in his brief : " In order to constitute a trust, it is not sufficient to name a beneficiary ; the object, terms and conditions of the alleged trust must also be stated ; " and he cites *Dillaye* v. *Greenough* (45 N. Y. 438) and *Steere* v. *Steere* (5 Johns. Ch. 1), which held in similar cases that no trust was constituted which the court could enforce. Counsel for the appellant contends that at most the will created a passive trust which is no trust at all. Upon the argument it was conceded by both counsel that there was no trust, the question being only whether the one-fifth part belonged to the husband or the wife.

It is true that it was held in *Holmes* v. *Mead* (52 N. Y. 332) and *Matter of Carpenter* (131 id. 86) that trusts of personal property are not affected by the Statute of Uses and Trusts, which applies only to trusts in real property. But this does not affect the provisions of the Personal Property Law. Besides, in *Cutting* v. *Cutting* (86 N. Y. 522), which held that the article entitled " Of Powers " in the Revised Statutes (1 R. S. 731 *et seq.*) is applicable as well to powers concerning personalty as to those affecting real estate, it was said by Chief Judge FOLGER (pp. 546, 547) : " There is certainly much force in the position that one body of law should not declare a different rule for two kinds of property, when there is

nothing in the nature of either kind of property, or in the nature and effect of the rule that calls for it. Clearly in the nature of things there is no reason why a gift or bequest of personal property, with a power of disposition, should not be measured by the same rule as a grant or devise of real estate with the same power. Nor is there cited or suggested any express provision of statute law that stands in the way of the application of the rule of the Revised Statutes to both kinds of property. As then it is the duty of courts of justice to endeavor to preserve an analogy between estates and interests in land and the income thereof, and similar interests in personal property, the judgment of this court is that the personal estate bequeathed by Mrs. Cutting, as above stated, is alike with the real estate devised by her out of the reach of the plaintiff as a judgment creditor of Fulton Cutting."

Following the statutes and the authorities which have been cited, we reach the conclusion that it was the intention of the testatrix to make, and that she did make, a distinction between the shares bequeathed to the unmarried sons and those bequeathed to the married sons in trust for their wives; that only a passive or formal trust can be spelled out of the will; that there are no clear and decisive words which create an absolute estate in Edward to the one-fifth share, and that there is no cutting down of any estate bequeathed to him; that Edward did not take any estate, and that the one-fifth share belongs solely and absolutely to Mary E. Reilly, his wife.

The decree of the surrogate should be reversed, with costs.

BARTLETT, WOODWARD and HOOKER, JJ., concurred; HIRSCHBERG, J., concurred in result.

Decree of the Surrogate's Court of Kings county reversed, with costs to the appellant, payable out of the estate and will construed and disposition of property directed in accordance with opinion of GOODRICH, P. J.