## S. A. MacQUEEN COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 50572. Promulgated October 24, 1932.

*A. S. Lisenby*, Esq., and *E. Stanley Richardson*, Esq., for the petitioner.

*Roy N. McMillan*, Esq., for the respondent.

1340

## OPINION.

SMITH: The only issue is whether, by the means employed and fully recounted in our findings of fact, the petitioner successfully disposed of the real estate in question without realizing a taxable profit, the amount of which was distributed proportionately to its common stockholders. In other words, did the petitioner corporation sell the property to MacQueen in good faith in an arm's length transaction, and did MacQueen in turn sell the property to Hatfield; or did the taxpayer, in substance, make the sale to Hatfield and realize the $65,000 profit?

Stephen A. MacQueen, at all times material hereto, was president, director and chief stockholder of the petitioner corporation. The record indicates that the sale to Hatfield had been negotiated by MacQueen and that he procured the transfer of the property to himself in order to make the sale to Hatfield. The corporation was solvent and the stockholders consented to the sale to MacQueen,

but the property was not actually transferred to MacQueen until after he had executed the declaration of trust in favor of the common stockholders in " conformity with and in confirmation of an understanding subsisting " between MacQueen and the other two stockholders " at and prior to the resolutions adopted February 1, 1927," by which the board of directors was authorized to sell the property to MacQueen. Obviously, therefore, when MacQueen received title to the property, he did so not in his individual right, but as trustee (cf. *Jackson* v. *Ludeling*, 21 Wall. 616, 634), and as a director of the petitioner corporation he occupied a place of trust and must execute the trust with fidelity for the common benefit of the stockholders of the corporation rather than for his own benefit (*Koehler* v. *Black River Falls Iron Co.*, 67 U. S. 715, 720), and in such cases he may be compelled to account to the corporation for any profit realized upon the sale of the property. *Bird Coal & Iron Co.* v. *Humes*, 157 Pa. St. 278; 27 Atl. 750, 752. In the case just cited the Supreme Court of Pennsylvania said:

* * * a director is a trustee for the entire body of stockholders, and both good morals and good law imperatively demand he shall manage all the business affairs of the company with a view to promote, not his own interests, but the common interests; and he cannot, directly or indirectly, derive any personal profit or advantage by reason of his position, distinct from his co-shareholders. 1 Potter, Corp. § 330; Mor. Priv. Corp. 517, 518. And by assuming the office he undertakes to give his best judgment in the interests of the corporation in all matters in which he acts for it, untrammeled by any hostile interest in himself or others. There is an inherent obligation on his part that he will in no manner use his position to advance his own interest as an individual, as distinguished from that of the corporation. *Coal Co.* v. *Parish*, 42 Md. 598; *Hill* v. *Frazier*, 22 Pa. St. 320. And all secret profits derived by him in any dealings in regard to the corporate enterprise must be accounted for to the corporation, even though the transaction in which they were made also advantaged the corporation of which he was director. *Parker* v. *Nickerson*, 112 Mass. 195. * * *

The *Bird Coal & Iron Co.* v. *Humes* case, *supra*, was followed in *Commonwealth Title Ins. & Trust Co.* v. *Seltzer*, 227 Pa. 410; 76 Atl. 77, 79, wherein the court said:

* * * An officer is but the agent of his corporation, and in all transactions in which its interests are involved he must act for it with unselfish singleness of purpose. If in any such transaction it appears that he has acted against the interest of his corporation, the mere fact that the means used to accomplish the unlawful end would, if standing alone, be lawful in themselves will not save such officer from responsibility to account for profits thus made by him which otherwise might have gone into the coffers of his corporation. * * * In scrutinizing the acts of such officers, the court will not heed mere forms when the substance which lurks behind them shows profits from a dealing in the corporation property.

The respondent attacks the *bona fides* of the sale to MacQueen, and obviously that transaction, previously hedged about by a declaration of trust to protect the shareholders, who had " equal rights in the distribution of corporate assets after the general debts of the corporation have been paid " (*Stone* v. *New Schiller Building & Loan Assn.*, 302 Pa. 544; 153 Atl. 758, 760), created a situation " which in law implies a fraud " upon the corporation. *Tenth Nat. Bank of Philadelphia* v. *Smith Construction Co.*, 242 Pa. 269; 89 Atl. 76, 82.

In substance, the purported sale to MacQueen did not effect any change in the beneficial ownership of the assets involved. Had the corporation transferred the property directly to Hatfield, the profit would have been distributable to the same persons receiving it from MacQueen, who was, in accordance with an agreement subsisting prior to any of the steps taken to effect the transfer, merely a trustee for the shareholders. This was in effect a recognition of the fiduciary relation which he occupied and was merely a means to carry out his duty to the corporation and to his coshareholders, while at the same time attempting a conveyance that would relieve the corporation of the tax upon the profit realized from the sale of the real estate. Although the petitioner corporation was entirely solvent and its dissolution and liquidation did not take place until several months later, the transfer to MacQueen was in reality a transfer in trust, and recognized as such by all the interested parties; his subsequent sale of the property should be treated in the same manner as the sales involved in *Rubay Co.*, 9 B. T. A. 133; *Taylor Oil & Gas Co.*, 15 B. T. A. 609; affd., 47 Fed. (2d) 108; certiorari denied, 283 U. S. 818; *James Duggan*, 18 B. T. A. 608; and *Hellebush et al.*, *Trustees*, 24 B. T. A. 660, to wit, as the sale of the corporation, and the profit taxed accordingly. Cf. *Rasmussen* v. *Eddy's Steam Bakery*, 57 Fed. (2d) 27; certiorari denied, October 10, 1932.

The facts of record distinguish the instant proceeding from the transactions involved in *Fruit Belt Telephone Co.*, 22 B. T. A. 440, and *Iowa Bridge Co.* v. *Commissioner*, 39 Fed. (2d) 777, wherein corporate taxpayers were held to have successfully divested themselves of corporate property and that the individual stockholders thereafter selling the property involved in the first case and fulfilling the contracts involved in the second case, realized income which could not be considered taxable to the corporation. The steps taken in the instant case to safeguard the trust relation were not present in either of those cases and, for all the record discloses, there is nothing to indicate that the laws of Georgia and Iowa would place the same interpretation upon such transactions as does the Pennsylvania law. In the circumstances, we do not think either of those cases controlling here.

*Judgment will be entered for the respondent.*