AGNES A. McAULIFFE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 49071. Promulgated December 26, 1933.

*Alfred Nelson, Esq.*, for the petitioner.
*E. A. Tonjes, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: This proceeding was brought to redetermine a deficiency in the income tax of the petitioner for the year 1926 in the sum of $1,005.15.

The petitioner alleges that the respondent erred in asserting the tax upon certain profits from the alleged sale of stock of the Bank of Italy and the First National Bank of Oakland, California, when, in fact, no such sale was made.

The petitioner is a widow on whom rests the duty of supporting her children and the responsibility of educating them. In October 1925 she received 100 shares of stock of the First National Bank of Oakland, California, and 75 shares of stock of the Bank of Italy from the estate of her father, who died in September 1924. The First National Bank stock was appraised at $10,000 and the Bank of Italy stock at $18,450. The stock was left to the petitioner for the purpose and as a means of taking care of her mother and herself and rearing her family.

In the fall of 1926 one William Nelson, knowing that the petitioner owned the 175 shares of stock, approached her with the request to borrow the stock to use as collateral in his furniture business. He offered a 10 percent return, whereas the stock was then paying less. The petitioner was induced to consult one A. T. Matthews, assistant vice president and branch manager of the Mercantile Trust Co., later the American Trust Co. Previous to seeing Matthews the petitioner inquired of the Bank of Italy officers as to his standing and was assured that he was a reliable man. Matthews stated to the petitioner that his bank did not want her to make such an arrangement with Nelson unless it could protect her and prevent a possible sale of the stock. He suggested an escrow agreement whereby Nelson was to execute a note to the petitioner and deposit furniture contracts due from purchasers in amounts double the value of the petitioner's stock, which was also to be deposited. The bank was to verify such contracts, to see that they were paid every month, and to make monthly replacements so that the security would remain at the same ratio.

The petitioner agreed to the proposed plan. Nelson was to be given 15 days in which to submit the furniture contracts and the bank was to have all necessary escrow papers prepared. The petitioner did not read the papers but signed them at the direction of Matthews, whom she trusted and on whose representations and integrity she relied absolutely. The original alleged escrow agreement was in the form of a letter of instructions dated September 1, 1926, and was supplemented by similar letters dated October 4, October 7, October 15, November 4, and December 16, 1926. In each letter appears a recital that the petitioner sold to Nelson certain shares of bank stock, with an option to repurchase a like number of shares before a definite expiration date.

Prior to her entering into the agreement with Nelson the petitioner had a $9,000 loan from the First National Bank of Oakland secured by 45 of the 75 shares of Bank of Italy stock owned by her. An official of the First National Bank suggested to her that she sell 20 shares of such stock and pay the loan, but she refused to do so because of her conviction that the stock was going much higher. She also refused to proceed with the Nelson agreement, whereupon Matthews lent Nelson $10,000 on his short-term note, the petitioner's loan was paid, and the 45 shares were released and were then to be used as collateral for Nelson's note as well as for later transactions under the escrow agreement.

Shortly after December 16, 1926, the petitioner heard rumors that Nelson's financial condition was unsound. Among those so intimating were two officers of the First National Bank. The petitioner then went to Matthews and one Lloyd Graybiel, an assistant trust and escrow officer of the American Trust Co., and was assured that " everything was perfectly all right." The petitioner's last conversation with Matthews was about March 18, 1927, and he reiterated his assurance that everything was all right and insisted that she sell some of her Bank of Italy stock. She again refused to do so.

On March 21, 1927, Nelson disappeared and became a fugitive from justice. The petitioner then learned through the Bank of Italy that all of her stock in both banks had been sold long before her last conversation with Matthews. Greatly alarmed, she immediately sought Matthews and Graybiel, but they refused to discuss the matter with her. She later learned that many of the furniture contracts were forgeries and that the bank had never verified them nor demanded and received replacements, as agreed.

The petitioner received interest from Nelson for two or three months. She realized approximately $2,500 from the furniture contracts and upon the settlement of the bankruptcy proceedings against Nelson she received a dividend of about $5,300 on her claim. Such sums were received after the year 1926.

Subsequent to 1926 the petitioner filed a civil action in the Superior Court of Alameda County, California, against the American Trust Co., Matthews, and Graybiel, charging a conspiracy and a fraudulent conversion of 175 shares of bank stock held in the bank's possession under the alleged escrow contract and asked judgment for $153,205, and other relief. The case was settled in 1931 by the payment to her of $43,644.70, one third of which she paid out as attorneys' fees.

The " letters of instruction ", purporting to set forth the agreement by which Nelson and the Mercantile Trust Co. obtained possession of the petitioner's bank stock and according to terms of which the stock was sold, did not embody the true and correct contract of

escrow entered into by the petitoner with Nelson and officials of the Mercantile Trust Co.

The petitioner filed no return for the year 1926, but the Commissioner, through a deputy collector, filed one for her. That return showed receipts of $1,420 from rents, $1,137.50 from dividends, and $20,567.85 from profits from the sale of the bank stock in question. Deductions of $401.20 covering interest paid and an exemption and credit for dependents of $4,300 were allowed. The petitioner proved additional losses of $2,874.17 arising from her operation and exchange of real estate.

From the foregoing facts and the supporting testimony it is clear that the petitioner's transfer of her 100 shares of stock of the First National Bank and her 75 shares of stock of the Bank of Italy to William Nelson was merely a loan to him. Her purpose in making such an arrangement was to receive the additional income which she needed in the rearing of her family. Throughout the negotiations prior to the so-called "escrow" agreement, in her dealings with Nelson and the bank officials and in her conversations with others she exhibited no intention or thought of selling her stock. On the contrary, with great certainty and emphasis she expressed her determination to retain her stock indefinitely or at least until its price became much higher than it was in the fall of 1926.

Counsel for respondent conceded at the hearing that petitioner intended to make a loan, but argued that the actual transaction was, in law, a sale.

We can not agree. The fraud perpetrated by Nelson and Matthews was such as to make the written agreement a nullity. Taxpayer agreed to lend and thought she was lending the securities. She never intended to sell. Furthermore, she never condoned or ratified the sale. She received none of the proceeds of the sale. She took the only avenue open to her and sued the offending parties for conspiracy to defraud. It would be a plain distortion of facts to hold that she made a sale of the stock in 1926 or at any other time.

Our conclusion is that the petitioner's transfer of her bank stock in 1926 was in legal effect a loan and not a sale. Petitioner derived no profit therefrom.

*Decision will be entered for the petitioner.*