FLORENCE H. FITCH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51670. Promulgated February 28, 1934.

*Otto J. Korb, Esq.*, for the petitioner.
*Arthur Clark, Esq.*, for the respondent.

OPINION.

LEECH: Petitioner seeks redetermination of a deficiency in income tax of $10,947.54 asserted by respondent for the calendar year 1925 and assigns two errors, (a) the inclusion by respondent of any amount in her income as representing a profit taxable to her upon the sale in that year of 2,400 shares of Standard Oil Co. stock and, (b) in the alternative, if it be held that such sale was made, the computation of a profit upon the basis of the March 1, 1913, value of such stock rather than its value at the time distributed to petitioner from a certain trust estate.

Petitioner is a resident of New York City. Her father, George H. Hopper, died in 1898. His large estate was given by his will to his wife in trust, the income to be paid during her life, one half to her

and one sixth to each of his three children, Jennie H. Nicholas, Charles H. Hopper, and petitioner. In case either one of the children should predecease the mother, leaving issue, such issue would take the parent's share of the trust income. The will further provided for the termination of the trust upon the death of testator's widow as follows:

Seventh: Upon the death of my wife Harriet A. Hopper, in case it should not precede my own decease, and in case it should precede my decease, then upon my death I hereby give, devise and bequeath all of my estate, real, personal and mixed, to my children aforesaid, to wit: Charles H. Hopper, Jennie M. Nicholas and Florence Lynnette Hopper, and to their heirs forever, as tenants in common, and not as joint tenants, share and share alike, one-third to each. In the event of the death of any of my said children before this devise and bequest shall become effectual their respective heirs shall take the proportion which such deceased child would have taken, and not otherwise.

On June 17, 1916, Charles H. Hopper died intestate and without issue, leaving a widow surviving him. The latter thereupon instituted a proceeding in the Surrogate's Court of New York County, asserting a right to her deceased husband's one-sixth share of the income of the George H. Hopper trust. In this proceeding construing the will of George H. Hopper the surrogate held that Charles H. Hopper took a vested interest in one sixth of the income from the trust for the term of his mother's life and in one third of the remainder, subject to be divested in the event he predeceased her leaving no issue, and that by the " Seventh " clause of the will above set out the testator intended that the time at which the devise and bequest of the corpus of the trust was to become effectual was the date of the death of the testator's widow, at which time the estate was to vest in possession of the remaindermen. It was accordingly held that the widow of Charles H. Hopper had no interest in income of the George H. Hopper trust accruing subsequent to her husband's death. The decision of the Surrogate's Court was affirmed by the New York Court of Appeals, *In re Hopper*, 223 N.Y. 669; 119 N.E. 1049.

Petitioner's mother duly served as trustee of the George H. Hopper trust up to the time of her death on October 4, 1919. For some years prior to her death the Equitable Trust Co. of New York had acted as her agent in the administration of the trust and had custody of the securities and moneys of the trust estate. It collected and distributed all income of the trust as required from time to time to the beneficiaries. The trust estate at the time of the death of petitioner's mother consisted of a large amount of real estate in Ohio and shares of stock in approximately 39 corporations, including 1,116 shares of the stock of the Standard Oil Co. of New Jersey.

Shortly after her mother's death petitioner, together with her sister, Jennie H. Nicholas, applied in person to the Equitable Trust Co. and requested delivery to them of the securities of the George H. Hopper trust as property which had vested in them in equal shares upon their mother's death. In response to this request the Equitable Trust Co. delivered to them the securities held by it, executing in each instance, as executor of the estate of their mother, a transfer of the stock certificates to them in equal shares. Petitioner and her sister thereupon presented these stock certificates to the transfer agents of the various corporations for reissue, half and half to each individually. In most instances the reissue of the stock was made without question. However, the transfer agent of the Standard Oil Co. of New Jersey requested that they first obtain either an order of court authorizing the transfer or qualify a successor trustee of the George H. Hopper trust to endorse the certificates for transfer. About this time this company issued a 400 percent stock dividend and changed its shares from a $100 par value to $25 per share. The additional shares due the trust estate were issued in the same manner as the original 1,116 shares. These additional shares were delivered by the company to petitioner and her sister. The total number of shares of Standard Oil Co. stock thereafter held was 22,320.

About this time the widow of Charles H. Hopper instituted various suits in the State of Ohio, together with proceedings in New York State, the purposes of which were to establish a right claimed by her to one third of the corpus of the George H. Hopper trust. One proceeding brought in New York State made a defendant of the Equitable Trust Co., charging the latter with having wrongfully delivered the assets of the estate to petitioner and her sister, and asked damages of approximately $1,000,000 for such alleged conversion. Thereupon the Equitable Trust Co. appealed to petitioner and her sister to furnish it some guarantee against liability by reason of the delivery to them of the securities of the trust estate, and in compliance with this request petitioner and her sister delivered back to the Trust Co. all of the securities theretofore turned over to them by it, including the stocks which had been reissued to them individually.

Following this a suit instituted by the widow of Charles H. Hopper in New York County was heard, but prior to the rendering of a decision a settlement was effected by petitioner and her sister with the widow of Charles H. Hopper providing for the payment to the latter of $302,000, one half of this sum to be paid by petitioner and one half by her sister. Counsel for petitioner and her sister, in order to effect a full and complete settlement of the claims of the widow

of Charles H. Hopper and to obviate any question in respect to a transfer of the securities of the George H. Hopper trust to petitioner and her sister, applied on their behalf for the appointment by the court of the Equitable Trust Co. as successor trustee of the George H. Hopper trust and on behalf of such trustee instituted a formal proceeding making all parties defendants, including the widow of Charles H. Hopper, seeking an accounting with these parties to carry into effect the settlement agreed upon. In this proceeding a decree was thereupon presented and entered directing the payment by the trustee of the amount of the liabilities of petitioner and her sister to the widow of Charles H. Hopper and their liabilities to pay certain attorney fees and expenses. This decree provided:

\* \* \* \* \* . \* \*

ORDERED, ADJUDGED AND DECREED that the plaintiff, in its capacity as Trustee under the Will of George H. Hopper, deceased, sell sufficient common stock of the Standard Oil Company of New Jersey constituting a part of the principal of the trust fund created by the will of the said deceased, to enable it to make the payments hereinafter directed, and it is hereby further

\* . \* \* \* \* \* \*

AND IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED that the defendant Florence H. Fitch is entitled to retain all of the principal and income of the estate of George H. Hopper, deceased, and of the trust fund created by his will heretofore paid to her.

During the progress of the litigation hereinbefore detailed petitioner's sister, Jennie H. Nicholas, had died and the executors of her will had been substituted in her place. Upon the entry of the decree above set out these executors requested the Equitable Trust Co., as substituted trustee, to sell 4,200 shares of the 11,160 shares of the stock of the Standard Oil Co. of New Jersey which such trustee was holding for the estate of Jennie H. Nicholas and apply the proceeds to the settlement of the one half which that estate was obligated to bear of the settlement due the widow of Charles H. Hopper and other obligations set out in the decree. Petitioner, however, objected to the sale by the Equitable Trust Co. of any part of the 11,160 shares of the Standard Oil Co. stock being held for her account, advising the Trust Co. that she wished to retain this stock and would raise in some other way her one half of the payments for which she was obligated. The Equitable Trust Co. thereupon agreed to loan petitioner the sum of $200,000 upon her note if secured by 6,500 shares of her Standard Oil Co. stock. On July 1, 1925, petitioner called at the office of the Equitable Trust Co. to close up the details of her loan from them of $200,000, to give the necessary security for such loan and to secure the settlement of the obligation upon her to make payment of her one half of the total indebtedness of $365,973.79. Petitioner was thereupon offered a letter prepared

by the Trust Co. for her signature, addressed to the Equitable Trust Co. and reading in part as follows:

In connection with the settlement of the litigation in this estate, you were directed as such substituted trustee to sell sufficient Standard Oil Company of New Jersey common stock to provide the necessary cash to be used in such settlement. I understand that you have sold Standard Oil Company of New Jersey common stock as follows:

1,000 shares at 44⅛
1,400 shares at 44⅜
1,800 shares at 44½

Less commissions and stamps, the proceeds thereof being $185,678, that being the share of my sister, Mrs. Nicholas estate.

I do now purchase from you and acknowledge receipt from you of 4,200 shares of the common stock of Standard Oil Company of New Jersey at the same price and I now give you my check in payment thereof for $185,720 which is the above-mentioned sum plus transfer tax stamps of $42, the stamps for which were affixed by you.

I am also making a loan from you individually of the sum of $200,000.00 secured by 6,500 shares of common stock of Standard Oil Company of New Jersey said loan being for a period of six months with interest at 4¾. I hand you herewith my duly executed note therefor and I direct you to deposit the proceeds of such note to the credit of my account in your Importers and Traders branch.

I also hand you herewith 4,200 shares of common stock of Standard Oil Company of New Jersey, being the stock hereinbefore referred to, to be held as collateral to said loan, and I authorize you as trustee to deliver to yourselves individually an additional 2,300 shares of Standard Oil Company of New Jersey common stock out of the shares to which I am entitled after same have been transferred into my name, to be held as additional collateral to said loan, and in this connection I hand you herewith a power of attorney in blank for said 2,300 additional shares.

Upon reading the letter in question petitioner advised the Trust Co. that she did not desire the stock sold and it was for this reason that she was securing the loan from them and that she could not understand how she was buying stock which already belonged to her. She was advised by the Trust Co. that this was the method of effecting the result which she desired and that all that would be necessary was for her to sign the letter, the note for $200,000, and a check for the amount stated, deliver to them the 4,200 shares of the common stock of the Standard Oil Co., and execute the power of attorney in blank for 2,300 additional shares; the settlement would be effected, and she would continue to own her stock. Thereupon petitioner signed the letter and the other documents referred to. The Trust Co. credited the proceeds of its loan to petitioner to her personal account and charged against it the check for $185,720. The proceeds of this check it credited to petitioner's account with the trust estate and against this credit it charged its payment in her behalf of $182,986.90, being one half of the total of the payment of $265,973.79

provided to be paid by the decree of the court hereinbefore set out. Petitioner in subsequent years paid off the loan of $200,000 and received back the 6,500 shares of Standard Oil Co. stock deposited as collateral.

The Equitable Trust Co. for the calendar year 1925 made a return as successor trustee of the George H. Hopper trust and reported a capital gain of $214,948 realized from the sale of 8,400 shares of Standard Oil Co. stock upon a March 1, 1913, value for such stock of $156,450. It paid a tax of $26,868.50 upon this reported gain from funds then in its hands belonging to petitioner and the Nicholas estate. It subsequently filed claim for refund of this payment as one erroneously made and this claim was allowed. The resulting refund was credited by respondent, one half to the Nicholas estate and one half to petitioner.

In determining the present deficiency against petitioner respondent contends that the Equitable Trust Co. as successor trustee of the George H. Hopper trust sold 8,400 shares of Standard Oil Co. stock under authority of the court decree set out above; that 4,200 shares of this amount, held for the account of the Nicholas estate, were sold on the market and 4,200 shares, held for the account of petitioner, were sold at the same figure to petitioner; and that on the latter sale it realized a profit which was thereupon distributed by it to petitioner by application of it in payment of her personal obligation. The pending deficiency is thus computed on the alleged profit represented in the consideration petitioner is charged with having paid.

Petitioner denies that she purchased any stock or that the trustees sold any stock for her account. She contends, and in this is, we think, borne out by the proof, that the transaction in question was for the purpose of avoiding sale of her stock under the court's decree. She testified that she wished to retain her stock and, to make this possible, arranged for a personal loan to her by the Trust Co. of an amount sufficient to satisfy the obligation resting upon her share of her father's estate, represented by one half of the total obligations directed to be paid by the decree of distribution. The testimony on the part of the Trust Co. is equally positive that it never intended to sell petitioner 4,200 shares of her Standard Oil Co. stock, but merely to effect payment of the obligation of petitioner, which represented a lien on her share of the estate. The purpose of the transaction, it contends, was to effect a delivery to her of the stock in such manner that it would represent, upon the transaction being closed, collateral security to it for the loan which it was making to petitioner of the funds necessary to satisfy her obligation.

The question presented to us for determination is whether there was *in fact* a transfer of ownership for a consideration upon which a profit accrued which is taxable to petitioner. If there was in fact no sale, the execution of agreements designating it as such and book entries so recording it have no effect to make it so. *Doyle* v. *Mitchell Bros.*, 247 U.S. 179.

Upon this question the facts proved make it clear, we think, that there could have been no actual sale by the Trust Co. to petitioner of the stock in question. The George H. Hopper trust had terminated by operation of law upon the death of petitioner's mother. The title of petitioner and her sister to the trust corpus had then vested in possession, irrespective of the fact that the naked title of record to the personal property was still in a trustee, even though the latter might have a power of sale. A sale if made under such conditions was one for the account of the remaindermen. As we said of a similar situation presented in *Francis Francis, Guardian*, 15 B.T.A. 1332:

> With the death of the life tenant, these petitioners as remaindermen became at once entitled, despite the nominal power of the trustee, to sell and distribute the proceeds. New York Real Property Law, §§92, 93; Personal Property Law, §11; *Cochrane* v. *Schell*, 140 N.Y. 516; *Brown* v. *Richter*, 25 App. Div. 239; *In re O'Reilly's Estate*, 82 App. Div. 374; *Steinert* v. *Steinert*, 161 App. Div. 841; *In re Finck's Estate*, 103 Misc. 526. The sale thereafter must be regarded as a sale by them with such resulting gain or loss to each as may be recognized by the statute.

The corpus of the George H. Hopper trust had not only vested in petitioner and her sister's estate, but actual division of the personal property had been made and physical delivery had been effected. This property was subsequently redelivered to the Trust Co. to hold as security to indemnify the latter against loss from any judgment rendered. The court recognized this in its decree in providing that petitioner was entitled to *retain* the property delivered to her. That part of the decree of distribution above set out directing sale of " sufficient " common stock of the Standard Oil Co. to pay the indebtedness manifestly has no application where petitioner furnishes the trustee with funds for that purpose, for then no insufficiency exists.

Although the letter prepared for petitioner's signature is an offer to buy, the transaction is wholly lacking in the essentials of a sale. The offer to buy is by the one already owning the property. No change of ownership whatever is effected by the transaction. The so-called *consideration* for the sale represents money borrowed by the petitioner with which to satisfy a personal obligation resting upon her and is so applied for her benefit by the so-called seller. Prior to the transaction petitioner owned the stock in question. At the close of the transaction it was still her property. At no time

during the course of the transaction was it ever the property of another. If the so-called *sale* had been at a figure below cost and petitioner were here attempting to sustain it as such and take credit for a deductible loss, we would assuredly look through form to substance and deny the claim as the adoption of a mere subterfuge to create a seeming loss where none had been realized in fact. *United States* v. *Phellis*, 257 U.S. 156. Cf. *J. L. McInerney*, 29 B.T.A. 1; *Nace Realty Co.*, 28 B.T.A. 467; *S. A. McQueen Co.*, 26 B.T.A. 1337; affd., 67 Fed. (2d) 857; *Agnes A. McAuliffe*, 29 B.T.A. 624.

We hold that in determining the deficiency, respondent was in error in increasing the petitioner's gross income by $82,799.64 as representing capital gain to her in the sale by the trustee of Standard Oil Co. stock. Our conclusion makes it unnecessary to pass upon the alternative issue submitted.

*Judgment will be entered under Rule 50.*