## LUCAS v. SCHNEIDER.
### No. 5578.

Circuit Court of Appeals, Sixth Circuit.
March 6, 1931.

DENISON, Circuit Judge, dissenting.

John H. Pigg, of Washington, D. C. (Thomas J. Sparks and Frank A. Ropke, both of Louisville, Ky., and C. M. Charest, of Washington, D. C., on the brief), for appellant.

Elwood Hamilton, of Louisville, Ky., for appellee.

Before DENISON, HICKS, and HICKENLOOPER, Circuit Judges.

. HICKS, Circuit Judge.

Bagby-Howe Drug Company, herein called the taxpayer, was a Kentucky corporation engaged at Louisville from 1904 to 1926 in the manufacture and sale of drugs at wholesale. Subsequent to March 1, 1913, and before the taxable year 1925, the taxpayer acquired certain real estate with improve-

ments at 626 Main street, Louisville, at an aggregate cost of $69,460.46. Prior to 1925, it took deductions in its income tax returns for depreciation of said property in the amount of $15,263, leaving an undepreciated balance of $54,197.46. In the taxable year 1924 the taxpayer executed two mortgages upon the property and received thereon $90,000 upon the first and $2,000 upon the second. In the taxable year 1925 it sold the property for $155,000, which was paid as follows:

| | |
|---|---:|
| Cash (paid in 1925) | $13,066.27 |
| Commission on sale | 4,300.00 |
| State and County taxes (paid by purchaser) | 568.48 |
| Transfer taxes (paid by purchaser) | 65.25 |
| Second mortgage notes, extending over period of five years | 45,000.00 |
| First mortgage notes, assumed by purchaser | 90,000.00 |
| Second mortgage notes, assumed by purchaser | 2,000.00 |
| Total selling price | $155,000.00 |

The profit realized or to be realized from the sale was $84,842.04, computed as follows:

| | |
|---|---:|
| Total selling price | $155,000.00 |
| Less cost of property, including improvements | $69,460.46 |
| Less depreciation | 15,263.00 |
| | 54,197.46 |
| Selling expense | 15,960.50 |
| | 70,157.96 |
| | $84,842.04 |

In its tax return for the year 1925 the taxpayer as a part of its gross income included as profit from the sale of the real estate the sum of $60,123.78. This resulted in a tax liability of $1,279.56 which was paid by appellee Schneider, trustee in bankruptcy, the taxpayer having been adjudicated a bankrupt on April 14, 1926. Appellee insists that the inclusion of the aforesaid sum of $60,123.78 in the return for 1925 was erroneous; that all the payment the taxpayer received that year upon the sale of the real estate was the $13,066.27 above indicated; that this payment did not exceed one-fourth of the purchase price, and that the taxpayer should therefore have made its 1925 return under section 212(d), and § 1208, of the Revenue Act of 1926, retroactively applied (U.

S. Code, tit. 26, § 953(d) and section 953a, 26 USCA § 953(d) and section 953a), called the installment plan basis, and that when so made its taxable income for 1925 would amount to only $19,091.44; that it had therefore overstated its taxable net income on the entire year's business to the amount of $41,032.32 and had shown a profit of $11,841.22 when it had in fact sustained a loss of $29,191.12; that it had therefore overpaid its taxes and was entitled to recover the said payment of $1,279.56 and interest. Respondent insists that the taxpayer is not entitled to have its taxable income for the year 1925 on the sale of said real estate computed upon the installment plan basis, but that the entire profit of $84,842.04 should have been included in its return for that year.

The question for decision is whether the sale of the property was an installment sale within the meaning of said section 212(d). This question is made to depend by the statute upon whether the initial payments exceed one-fourth of the purchase price. If they do not it was an installment sale; otherwise it was not. It is necessary therefore to determine what is meant by the "purchase price" and the "initial payments." The purchase price is unquestioned—it was $155,000. Initial payments are defined in the statute as follows: "As used in this subdivision the term 'initial payments' means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made."

The statute recognized the common method of making payments in either cash or property, or both, and provided that initial payments might be in either or both but excluded "evidences of indebtedness of the purchaser during the taxable period in which the sale * * * is made" from the initial payments. Section 212(d) has reference to the indebtedness of the purchaser to the seller. It deals with no other relationship. It has nothing to say touching mortgages or mortgagees or evidence of indebtedness to mortgagees. It is a revenue measure dealing with the return of a taxpayer who has made a sale of property (in this case of real estate) upon the installment payment plan, and excludes evidences of indebtedness by reason of the deferred installment payments because to have included such evidences in the initial payments would have defeated the purpose of the installment plan of return.

All other "property" received by the seller from the purchaser as a payment during

the taxable period in which the sale was made must be included in the "initial payments." See Elmore v. Comm'r, 15 B. T. A. 1210, 1212. Was the assumption of the mortgages by the purchaser "property" to be included just as was cash in hand? We think it was. It was one of the chief considerations for the sale. It was not a promise to pay the seller; it was a promise to the seller to pay the mortgagee. Its effect in equity was to relieve the seller of any direct liability. As between seller and purchaser it constituted the seller the surety and the purchaser the principal debtor to the mortgagee. Under the law of Kentucky (Gray v. Gilliam, 166 Ky. 194, 196, 179 S. W. 22) the purchaser is liable personally to the mortgagee. See Union Mut. Life Ins. Co. v. Hanford, 143 U. S. 187, 190, 12 S. Ct. 437, 36 L. Ed. 118. We think the promise coupled with the cash payment was a sufficient consideration for the sale. There was, of course, the possibility of default by the purchaser in failing to pay the mortgage debts, in which case the seller would have been obliged to respond, but the resultant cause of action by the seller against the purchaser would not be for money due upon the sale, but for damages for breach of contract. This obligation of the purchaser to pay the mortgage debts was undoubtedly the "property" of the seller.

"The term 'property,' standing alone, includes everything that is the subject of ownership. It is a nomen generalissimum, extending to every species of valuable right and interest. * * *" Scranton v. Wheeler, 179 U. S. 141, 170, 21 S. Ct. 48, 59, 45 L. Ed. 126.

Contract rights stand high in the scale of property rights. The seller acquired the benefit of the purchaser's obligation, and there is nothing to indicate that it was worth less than the amount involved. The taxpayer had a right to offset the purchaser's primary obligation against his own secondary liability and treat the $92,000 as income to the extent that it exceeded the basis to him. It was derived from "dealings in property."

By virtue of his authority under section 1101 of the Revenue Act of 1926 (26 USCA § 1245), the Commissioner on August 28, 1926, promulgated Internal Revenue Regulation No. 69, and by article 44 thereof excluded the mortgages from the initial payments. Regardless of whether this was a valid regulation, it was accepted by the Board of Tax Appeals as legally and equitably sound when applied to the facts of the particular cases coming before the Board. See Dalriada Real-

ty Co., 5 B. T. A. 905, 908; Watson v. Comm'r, 20 B. T. A. 270, 272; see also Pacheco Creek Orchard Co., 12 B. T. A. 1358; and J. W. McWilliams, 15 B. T. A. 329. But in none of these cases did the mortgages exceed the basis to the vendor of the property sold. The case in hand presents a different situation. Here the mortgages did exceed the basis to the vendor in the sum of $37,802.54, and the situation is controlled by the last paragraph of art. 44 as amended by Treasury Decision No. 4255, which provides that, "in the sale of mortgaged property the amount of the mortgage, whether the property is merely taken subject to the mortgage or whether the mortgage is assumed by the purchaser—to the extent it does not exceed the basis to the vendor of the property sold—shall not be considered as a part of the initial payments," provided article 44 as thus amended is a valid regulation. We see no reason for questioning its validity in this case. It adds nothing to initial payments which may not be added under the statute. We think the effect of it was to reflect more clearly the real meaning of the statute and to require the income to be returned during the taxable period in which it was received.

The aforesaid amount of $37,802.54 added to the cash payment of $13,066.27 aggregates more than one-fourth of the purchase price of $155,000, even disregarding the items of taxes and of commissions and the taxpayer is therefore not entitled to the benefit of section 212(d) as found by the District Judge. It had not overpaid its taxes and was therefore not entitled to recover.

Reversed.

DENISON, Circuit Judge (dissenting).

I am unable to concur. Omitting the relatively unimportant $2,000 item, the substance of the vendee's agreement with the taxpayer-mortgagor-vendor was that the remaining unpaid $135,000 balance of the agreed price should be paid in five annual installments of $9,000 each, to be paid by the vendee to the vendor, and concurrently (mainly), in nine annual installments of $10,000 each, to be paid by the vendee to the vendor's mortgagee, in serial discharge of the vendor's obligation. As to the 1926–30 part of the period, the vendee's written contract substantially was: "Each year I will pay (a) to you $9,000, and (b) for your use and benefit and to pay your debt, $10,000." All agree that promise (a) is an "evidence of indebtedness"; I cannot see that promise (b) is for this definitory pur-

pose essentially different. The "evidence" is the same in (b) and in (a). There is no reason why "indebtedness" should have any technical or limited meaning;[1] it is often used as an equivalent of "obligation"; and I think should be so read here. There is no underlying reason why the existence of taxable income arising from a transaction should depend upon the choice of one of the two equivalent forms in which it could be cast; and yet the language of a statute may clearly require taxing one form and exempting the other. Not so, where a reasonable construction of the chosen words may include both forms.

Further, I agree that article 44 of Regulation 69, as amended, is a valid regulation; but ·I see no reason why it was not likewise also valid in its earlier unamended form. That earlier form excluded from "initial payments" the amount of all mortgages, whether the purchaser "assumed" or took "subject to"; and if applied to this case would require affirmance of the judgment below. The earlier form is the applicable one. It was promulgated August 28, 1926. The tax now involved was paid in 1926; the liability was challenged in 1927 and claim for refund was made in February, 1928; it was rejected June 20, 1928; and this suit was begun September 20, 1928. The amendment, which first proposed the "basis" as an element, was made January 8, 1929.

---

[1] Webster's New International: "Indebtedness"—debts collectively. "Debt"—what one is bound to pay to another or perform for his benefit; obligation.