J. L. McInerney, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 54676.   Promulgated September 6, 1933.

*H. A. Mihills, C.P.A.*, for the petitioner.
*Prew Savoy, Esq.*, and *J. A. Morawski, Esq.*, for the respondent.

1

2

OPINION.

GOODRICH: It is stipulated upon the record that petitioner and his wife conveyed the properties, both real and personal, acquired by petitioner from Baldwin, through Wiltshire as trustee, to the National Spring & Wire Co. for a consideration of $572,700, this figure being arrived at by deducting $40,000, representing mortgages assumed by the purchaser, from $612,700, the gross selling price of the assets. Upon that basis, petitioner contends that the initial payment received in 1928, the year of the sale, was less than 40 per centum, and the transaction may be treated as an installment sale. We refuse to be bound by this stipulation, for it appears to be contrary to the facts of record. *William Ernest Seatree*, 25 B.T.A. 396. While it is true that the offer to sell, as recited in the minutes of a meeting of the stockholders of the National Co., mentions encumbrances totaling only $40,000, nevertheless, as set out in our findings of fact, the three liens totaling $100,000 were then outstanding. They were mentioned in the deed by which Wiltshire, trustee, conveyed to petitioner; they were mentioned in the deed by which petitioner and his wife conveyed to the National Co., and also in the deed by which the National Co. conveyed the properties to the National Marshall Spring Corporation. It may be there is an explanation for this discrepancy, but petitioner has offered none, either in his testimony or upon brief. Consequently, upon the record before us it appears clearly that when these properties were sold by petitioner they were subject to encumbrances, not only of $40,000, the amount which petitioner uses in his computations, but of $100,000, all of which were assumed by the purchaser. Inclusion of an additional lien assumed by the purchaser in the amount of $60,000 presents a basis quite different from that urged by petitioner to be used in determining whether the initial payment exceeded the 40 per centum limitation prescribed by section 44 of the Revenue Act of 1928. The cost to the purchaser becomes $612,700, of which $100,000 consists of mortgages assumed, and the amount receivable

by petitioner as vendor becomes $512,700. See article 352, Regulations 74; *Burnet* v. *S. & L. Building Corp.*, 288 U.S. 406 (affirming 19 B.T.A. 788), and cases there cited; cf. *Lucas* v. *Schneider*, 47 Fed. (2d) 1006. Petitioner received in 1928 $225,000, which is in excess of 40 per centum; consequently, he is not entitled to the benefit of the installment sales provision of the statute.

However, we do not rest our determination solely upon petitioner's failure to overcome the evidence contradicting the stipulated figures, for we are convinced that certainly more than 40 per centum of the basis used by petitioner, and perhaps the entire consideration, was available to petitioner in 1928. The National Spring & Wire Co. was created for the sole purpose of passing title in the properties to the National Marshall Corporation and passing payment therefor to petitioner. It was the instrument of all parties to this sale, and was controlled by Kingston, who served as attorney for all the parties, including petitioner and his wife. As a conduit, it received from the National Marshall Corporation the purchase money due petitioner. So far as the deeds indicate, the sale was a cash transaction, and there was no written contract covering the deal beyond the offer from petitioner and his wife as recited in the minutes. In contradiction to the terms of that offer it was testified that the terms of sale were " one third down, and one third each year," yet it is undisputed that, upon petitioner's request, he received $225,000 immediately the conveyance was made, and that the balance due him, either in cash or in notes of the National Marshall Corporation in 1928, was paid over to and held by the National Co. We have little doubt but that he could have obtained that balance, had he so desired. We find an explanation for the failure to pay petitioner in full during 1928, in cash or its equivalent, in the following excerpt from the minutes of a meeting of the stockholders of the National Co. held on December 3, 1929:

The Treasurer of the corporation made an informal report of the affairs of the company * * *. He stated further that the company was in position to make a substantial reduction of its liabilities to Mr. and Mrs. McInerney, *but who had requested that payment be withheld until after Jan. 1st, 1930.* [Italics ours.]

We are convinced that the greater part, if not all, of the consideration was available to petitioner in 1928 and might have been received by him upon demand and that, under these circumstances, it must be regarded as constructively received by him. *A. L. Voyer*, 4 B.T.A. 1192; *Maryland Casualty Co.* v. *United States*, 251 U.S. 342; *Frank E. Best*, 26 B.T.A. 1070; *F. H. Wilson*, 12 B.T.A. 403.

Respecting the second issue, respondent contends that the conveyance of the real estate by petitioner to himself and his wife cre-

ated, under the law of Michigan, an estate by the entirety, the profit from which is taxable to the husband, citing *Sylvester A. Sommers*, 18 B.T.A. 768. That decision is not here controlling, for we are concerned not with the income *from* the property, but with the proceeds *of* sale of the property, which, in this case at least, is quite a different thing. An assignment of the income would not relieve petitioner of the tax thereon, but it is his contention that he transferred to his wife, as a gift, a one half interest in the properties, both real and personal, and that consequently one half of the proceeds derived from the subsequent sale of the properties belonged to her. It is plain that the motive for the transfers was to divide the profit derived from the sale and thus reduce the tax liability otherwise falling upon petitioner as the sole vendor, and it must be conceded that, so far as form of the transfers is concerned, they were effected by valid means. Interest in the real estate was conveyed by proper deeds and, while the bill of sale covering the interest in the personal property was held by Kingston, Mrs. McInerney was fully advised as to its effect. The record evidences a sufficient delivery and acceptance of a gift of the interest in the properties. But scrutinizing the circumstances surrounding the transaction, as we must do, and looking to the substance of the matter, we conclude that the intention to make a bona fide gift of that interest was lacking. At the time this purported gift was made, all arrangements for the sale of the properties, even to the organization of the " dummy " corporation, had been made; it remained only to pass title and receive the consideration. Although there is some general testimony that petitioner and his wife had previously worked together on business matters and that petitioner had on occasion given to her a part of the profits of his enterprise, there is no evidence here that Mrs. McInerney had previously been promised an interest in these properties. Nor is there any evidence that her interest in the properties and her share of the sales proceeds were received by her free from the domination of her husband and subject to her own control and desires. On the contrary, the sale was carried out as arranged, the wife joining in passing the title. We are not told whether her assent to this disposition of the properties was of her own volition. Nor are we told why she applied a part of her share of the sales proceeds to the payment of the debt owed by petitioner upon his purchase of the properties, nor what was done with any further amounts received by her, whether applied to uses of her own or turned over to her husband. To us the circumstances indicate not a bona fide gift of an interest in the properties which the wife might control and manage as she desired, but a continuing intention to effect a sale and an acceptance of the interest by the wife with the understanding that she would

pass it on to the purchaser upon the terms previously arranged by her husband. Consequently, the intention and the effect was not to give a present one-half interest in the properties, but an interest in the profit to arise from the sale. That does not relieve petitioner from his tax liability. Cf. *Burnet* v. *Leininger*, 285 U.S. 136; *Rosenwald* v. *Commissioner*, 33 Fed. (2d) 423 (affirming *Julius Rosenwald*, 12 B.T.A. 350); certiorari denied, 280 U.S. 599; *Rensselaer & Saratoga R.R. Co.* v. *Irwin*, 249 Fed. 726; certiorari denied, 246 U.S. 671; *Petitfils* v. *Commissioner*, 64 Fed. (2d) 309. The transfers were a subterfuge, effected upon the eve of the consummation of the sale in the hope that it would serve to avoid a part of the tax to be imposed upon the profit derived therefrom. We conclude that the real owner and vendor of the properties was petitioner, and that the entire profit is taxable to him. *Nace Realty Co.*, 28 B.T.A. 467. Cf. *Leonard Marshall Wright*, 26 B.T.A. 21; *William Ernest Seatree*, *supra*.

*Judgment will be entered under Rule 50.*