**McINERNEY v. COMMISSIONER OF INTERNAL REVENUE.**

No. 6920.

Circuit Court of Appeals, Sixth Circuit.

March 9, 1936.

J. S. Y. Ivins, of Washington, D. C., for petitioner.

Helen R. Carloss, of Washington, D. C. (Frank J. Wideman, Sewall Key, and Lucius A. Buck, all of Washington, D. C., on the brief), for respondent.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

This case arises on petition to review an order of the Board of Tax Appeals rede-

termining a deficiency in income tax for the calendar year 1928 in the amount of $20,-407.24. 29 B. T. A. 1.

The petitioner, prior to July 11, 1927, was general manager of the National Spring & Wire Company of Grand Rapids, Michigan. The company was then placed in receivership, and William H. Baldwin, a creditor, bought the entire assets at the receiver's sale. Thereafter George Wiltshire was appointed trustee for Baldwin, and authorized to operate the properties, while petitioner continued in the employ of the company as president and general manager.

Wiltshire desired to sell the properties, and agreed with petitioner that in case he should arrange a sale, petitioner might retain all of the proceeds in excess of $225,-000. Petitioner negotiated from the early part of 1928 with the National Marshall Spring Corporation, a subsidiary of the Nachman Spring Filled Corporation of Chicago, reaching an agreement for sale in November of that year. Wiltshire, as trustee for Baldwin, transferred the properties, real and personal, to the petitioner on November 8, 1928, the real estate being conveyed subject to three mortgages, one for $10,000, one for $30,000, and one for $60,-000, which last mortgage was extinguished by merger. The consideration was $225,000 and the assumption by petitioner of liabilities of the corporation in the amount of $279,070.03 including the mortgages. These liabilities must have been incurred, if incurred at all, in the operation subsequent to the receiver's sale. Baldwin, as purchaser at the receiver's sale, acquired title free and clear of all obligations except liens of record. The corporation was operated after the sale for less than two years. The record does not itemize the liabilities, and petitioner nowhere states that he has paid any of them. He simply adds $279,070.03 to $225,000 and returns the price as $504,070.03 less the mortgages assumed, namely, $464,070.03.

The National Marshall Spring Corporation insisted that a corporation be formed through which it might secure title to the property. Accordingly on December 4, 1928, George B. Kingston organized the second National Spring & Wire Company for this purpose. Kingston was attorney for the petitioner, and also attorney for Wiltshire and the National Marshall Spring Corporation. The National Spring & Wire Company had a capital of $1,000 consisting of ten shares of stock of $100 par value, eight of which were held by Kingston, who was president and treasurer, one by Kingston's secretary, and the remaining share by petitioner's stenographer.

On December 16, 1928, petitioner executed a bill of sale of one-half of the personalty to his wife, Katherine McInerney. On December 17, 1928, petitioner executed a quit-claim deed to the real estate, in which his wife joined, in favor of Kingston's secretary, who on the same day executed a quit-claim deed to the same property in favor of petitioner and his wife. Also on the same day petitioner and his wife jointly offered to sell to the National Spring & Wire Company all of the real and personal property for a consideration of $572,700, the purchaser to assume the mortgages. The offer provided that "said sale, if consummated," should "be made as of November 24, 1928," and required $225,000 to be paid on the date of the acceptance, $150,000 to be paid on January 15, 1929, and the balance on January 15, 1930, with interest. The offer was accepted on December 18, 1928, and petitioner and his wife executed the necessary deed and bill of sale. On the same date the board of directors was authorized by the stockholders to sell all of the National Spring & Wire Company's assets to the National Marshall Spring Corporation, and the offer was duly made to sell and convey the property "as of November 24, 1928," subject to the mortgages, for the consideration of $515,700, payable $400,000 in cash and the balance in a promissory note. On the same day the corporation conveyed the real property to the National Marshall Spring Corporation, and on December 19, 1928, it executed a bill of sale of the personalty.

The National Marshall Spring Corporation, on December 22, 1928, paid the National Spring & Wire Company $374,224 in cash and gave its note for $115,700 with interest. $225,000 of the $374,224 was remitted to the partnership of which Baldwin was a member under written authority from petitioner and his wife.

On January 2, 1929, the treasurer reported to the stockholders the receipt of $25,000, which was approximately the balance of the cash payment due. On that day the National Spring & Wire Company had a cash balance of $174,224, exclusive of cash capital paid in, and the treasurer was authorized to pay one-half of this amount

to the petitioner, and a like amount to his wife, which was done.

The National Spring & Wire Company did no business except that connected with the sale and transfer of the assets of the former corporation to the National Marshall Spring Company. It was dissolved in 1931.

The Board of Tax Appeals decided that the corporation was created for the sole purpose of passing title to the purchaser and of passing payment to the petitioner, and that as it was controlled by the attorney who acted for all the parties to the sale, the payment of $374,224 made to the corporation for the purchaser must be re-garded as constructively received by the petitioner in 1928, so as to come within the provisions of Article 352 (2) of Treasury Regulations 74.[1] It also found that under the facts the vendor did not intend to make a present *bona fide* gift of one-half of the property to his wife, but had a continuing intention to effect the sale upon the terms previously arranged by him which the wife carried out, and that the entire profits re-ceived in 1928, namely, $115,405.46, were taxable to him.

It is conceded by the Commissioner that under Article 352 of Treasury Regula-tions 74,[2] the mortgages are to be included in the gross selling price, but the Commis-sioner contends that the initial payment was not confined to $225,000, that the taxpayer received more than forty per cent. of the selling price as the initial payment and that the profit could not properly be returned as income on the installment basis. If the petitioner constructively received $374,224 on December 22, 1928, the decision of the Board is correct.

The National Spring & Wire Company had no assets and carried on no business. Its only function was to complete this particular sale and transfer. Having a cap-ital of $1,000, it agreed to buy real and per-sonal property for a consideration of $572,-700. No security and no notes were given to Wiltshire by petitioner, nor to petitioner by the National Spring & Wire Company in the transaction. All parties treated the Na-tional Spring & Wire Company as inter-mediary and agent for both the vendor and vendee, and not as purchaser. Under the contract, the sale was made as of November 24, 1928, and of the down payment agreed on, $374,224 was actually paid within that year to the corporation dominated by the petitioner's attorney.

The record affords ample support for the conclusion of the Board that the Na-tional Spring & Wire Company was a mere conduit between the parties. As the first payment aggregated more than forty per cent. of the purchase price, and as the cor-poration was the agent of the petitioner, the profit was rightly determined on the completed sale basis. Cf. Maryland Casu-alty Co. v. United States, 251 U.S. 342, 40 S.Ct. 155, 64 L.Ed. 297.

With respect to the second issue, the petitioner contends that he transferred to his wife as a gift a one-half interest in the properties, both real and personal; that

---

[1] Art. 352. "Under section 44 deferred-payment sales of real property fall into two classes when considered with respect to the terms of sale, as follows:

"(1) Sales of property on the install-ment plan, that is, sales in which the pay-ment received in cash or property other than evidences of indebtedness of the pur-chaser during the taxable year in which the sale is made do not exceed 40 per cent of the selling price.

"(2) Deferred-payment sales not on the installment plan, that is, sales in which the payments received in cash or property other than evidences of indebt-edness of the purchaser during the tax-able year in which the sale is made ex-ceed 40 per cent. of the selling price.

"Sales falling within class (1) and class (2) alike include (*a*) agreements of pur-chase and sale which contemplate that a conveyance is not to be made at the out-set, but only after ·all or a substantial portion of the selling price has been paid, and (*b*) sales where there is an immediate transfer of title, the vendor being pro-tected by a mortgage or other lien as to deferred payments."

[2] Art. 352 (2).

"In the sale of mortgaged property the amount of the mortgage, whether the property is merely taken subject to the mortgage or whether the mortgage is as-sumed by the purchaser, shall be included as a part of the 'selling price,' but the amount of the mortgage, to the extent it does not exceed the basis to the vendor of the property sold, shall not be consid-ered as a part of the 'initial payments' or of the 'total contract price,' as those terms are used in section 44, in articles 351 and 353, and in this article. Commissions and other selling expenses paid or incurred by the vendor are not to be deducted or taken into account in determining the amount of the 'initial payments,' the 'total con-tract price,' or the 'selling price.' "

one-half of the proceeds derived from the sale belonged to her, and that he is taxable only on one-half of the profit.

The various documents executed by petitioner and his wife created an estate by the entirety in the real estate under the laws of Michigan (Detroit & Security Trust Co. v. Kramer, 247 Mich. 468, 226 N. W. 234), but not in the tangible personal property (Scholten v. Scholten, 238 Mich. 679, 214 N.W. 320). Cf. Commissioner v. Hart, 76 F.(2d) 864 (C.C.A.6). So far as form is concerned, the transfers were effected by proper deeds and by properly executed bill of sale. However, the Board found that the intention to make a *bona fide* gift of the interest was lacking. At the time the claimed gift was made, every arrangement had been completed for the sale. Early in 1928 petitioner approached the National Marshall Spring Company about buying the properties, and not until the arrangements were made were the properties transferred to petitioner. No security for the transfer was given by petitioner, and while the title in him became absolute upon November 8, 1928, it is evident that the conveyances were consummated in pursuance of petitioner's contract to sell the property. In pursuance of the same contract, the National Steel & Wire Company was organized. The corporation was formed twelve days prior to the claimed transfer to petitioner's wife. The sale was carried out precisely as arranged, with the wife joining in the execution of all necessary documents. If petitioner's contention be true, his wife offered to sell her interest on the same day that the documents conveying the real estate were executed, and she actually conveyed her interest within two or three days thereafter. $225,000 of the $374,224 was applied, in accordance with the contract made many months before, in payment to Baldwin. Under the circumstances it appears that it was not the intention of the petitioner that his wife should have any real interest in this property. He had agreed to dispose of all of it long before, and his wife acted at every point in accordance with the agreement. A continuing intention existed to effect the sale, and the transfer to the wife was a mere incident.

A single transaction may not be broken up into various elements to avoid a tax. Cf. Ahles Realty Corp. v. Commissioner, 71 F.(2d) 150, 151 (C.C.A.2); West Texas Refining & Development Co. v. Commissioner, 68 F.(2d) 77 (C.C.A.10);

Shoenberg v. Commissioner, 77 F.(2d) 446, 448 (C.C.A.8). The petitioner asks us to separate one element of the transaction from all of the others. Viewing the situation as a whole, we conclude that there is evidence supporting the finding of the Board of Tax Appeals. The gift was a gift of an interest in the profits and does not relieve the petitioner of tax liability. Cf. Burnet, Commissioner, v. Leininger, 285 U. S. 136, 52 S.Ct. 345, 76 L.Ed. 665; Lucas, Commissioner, v. Earl, 281 U.S. 111, 50 S. Ct. 241, 74 L.Ed. 731; Wood v. Commissioner, 74 F.(2d) 78 (C.C.A.6).

The order of the Board of Tax Appeals is affirmed.