*Decision will be entered under Rule 50.*

STEPHEN A. CISLER, JR. AND RACHEL W. CISLER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91573. Filed November 27, 1962.

*Robert E. Hatton, Esq.*, for the petitioners.
*Arthur Clark, Jr., Esq.*, for the respondent.

OPINION.

DAWSON, *Judge:* Respondent determined a deficiency in income tax and an addition to tax under section 294(d)(1)(A) of the Internal Revenue Code of 1939 for the taxable year 1952 in the amounts of $9,250.50 and $825.41, respectively.

The only issue for decision is whether the petitioners received more than 30 percent of the sales price of their preferred and common stock in Radio Kentucky, Inc., in the taxable year 1952 so as to disqualify the gain for installment sales treatment under section 44(b) of the Internal Revenue Code of 1939.[1] Additional issues presented by the pleadings have been disposed of by stipulation of the parties.

All of the facts were stipulated and are so found.

Stephen A. Cisler, Jr., and Rachel W. Cisler are husband and wife and presently reside in Louisville, Kentucky. Their joint Federal income tax return for the taxable year 1952 was prepared and filed, while they resided in San Mateo, California, with the district director of internal revenue at San Francisco.

Prior to January 1, 1952, Stephen A. Cisler, Jr. (hereinafter referred to as the petitioner), owned 314 shares of preferred stock and 917 shares of common stock in Radio Kentucky, Inc. Petitioner's adjusted cost basis in the 314 shares of preferred stock was $15,700, and he had no adjusted cost basis in the 917 shares of common stock.

On November 10, 1951, the petitioner borrowed $25,000 from Charles Barham, Jr., and Emmalou W. Barham of Charlottesville, Virginia, and pledged to them, among other things, his 917 shares of common stock in Radio Kentucky, Inc., as collateral security for the loan. Petitioner's common stock was, at that time, subject to a prior agreement with F. Eugene Sandford and Edwin E. S. Weldon under which they held a first option to repurchase the petitioner's stock. For this reason Sandford and Weldon were made parties to the agreement

---

[1] SEC. 44. INSTALLMENT BASIS.

(b) SALES OF REALTY AND CASUAL SALES OF PERSONALITY [*sic*].—In the case (1) of a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of a taxpayer if on hand at the close of the taxable year), for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed 30 per centum of the selling price (or, in case the sale or other disposition was in a taxable year beginning prior to January 1, 1934, the percentage of the selling price prescribed in the law applicable to such year), the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this section. As used in this section the term "initial payments" means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made.

between the petitioner and the Barhams. The agreement provided, in part, as follows:

1. The Lenders will lend the Borrower the sum of Twenty-five Thousand Dollars ($25,000.00), the loan to be evidenced by a collateral note of the Borrower in the face amount of Twenty-five Thousand Dollars ($25,000.00) of even date herewith payable in monthly installments beginning March 15, 1952, with a payment of Five Hundred Dollars ($500.00) per month for four (4) months and with a payment of One Thousand Dollars ($1,000.00) on the fifteenth day of July, 1952, and each and every month thereafter until the debt is paid in full. Said note shall bear interest at the rate of five per cent (5%) per annum payable monthly.

   \*       \*       \*       \*       \*       \*       \*

4. As additional consideration for said loan the Borrower shall pay to the Lenders on or before the fifteenth day of each month beginning January 1, 1952, a sum equal to two per cent (2%) of the gross income of Bay Radio, Inc., in the preceding calendar month with a minimum, however, of Two Hundred Dollars ($200.00) per month, for a period of fifteen (15) months, and thereafter a sum equal to one per cent (1%) of said gross income monthly thereafter, until said loan is paid, with a minimum of One Hundred Dollars ($100.00) per month.

On September 18, 1952, the petitioner entered into an agreement with Radio Kentucky, Inc., which provided, in pertinent part, as follows:

THAT WHEREAS the party of the second part is the owner and holder of 314 shares of the preferred stock of the party of the first part and 917 shares of common stock of the party of the first part and has agreed to sell all of his said holdings, and

WHEREAS at a special meeting of the stockholders of the party of the first part, due notice of which was given and all stockholders being present and voting, it was moved, seconded and duly carried that the party of the first part purchase its capital stock, both preferred and common, from the party of the second part at a price of $50.00 per share for the preferred stock and $48.30 per share for the common stock, making a total purchase price of $60,000.00, which said purchase price would be payable under the following terms and conditions:

(1) That the party of the first part cancel the indebtedness of the party of the second part to it of_____ $13,633.53
and makes cash payment herewith to second party of_____ 2,066.47

                                                                         $15,700.00

(2) Cash of $8,000.00 on the completion of the following conditions:

(a) the execution of this agreement, subject to FCC approval,

(b) the transfer of 314 shares of preferred stock of Radio Kentucky, Inc. to Radio Kentucky, Inc.,

(c) execution of irrevocable power of attorney to Treasurer of Radio Kentucky, Inc., for transferring 917 shares of common stock of Radio Kentucky, Inc., now pledged as collateral on a loan hereinafter referred to in 3 below, and

(d) the execution and delivery to Radio Kentucky, Inc. of a letter of agreement from the holder of a note of $25,000.00, signed, S. A. Cisler, Jr., accepting pre-payment of the balance due on said note.

(3) The party of the first part agrees to assume the indebtedness of the party of the second part in favor of Charles Barham, Jr. and Emmalou W. Barham, which said indebtedness is payable in five installments, the first four of said installments being for the principle [*sic*] sum of $1000.00 each and the fifth and final installment being in the sum of $16,000.00 the first of said installments being due and payable October 15, 1952 and a like installment being due the 15th of each and every month thereafter until February 15, 1953 when the final of $16,000.00 installment is due (all interest on this indebtedness to be paid by S. A. Cisler, Jr.), said installment of principal totaling_____ $20,000.00

(4) For the remaining portion of said purchase price the party of the first part will execute unto the party of the second part four notes the first three of said notes being in the principal sum of $4,000.00 each and fourth and final note in the sum of $4,300.00, one each of said notes being due and payable on or before May 15, 1953, August 15, 1953 and January 15, 1954 and a final note due March 15, 1954, with interest from February 15, 1953 at the rate of 5% per annum_____ 16,300.00

Grand Total_____ 60,000.00

It is further agreed to between the parties hereto that this sale of the holdings of the party of the second part unto the party of the first part shall be in full satisfaction of all claim the party of the second part may have against the party of the first part, and of all interest of the party of the second part in the party of the first part, and said party of the second part further agrees that all bills for labor, materials, time, equipment and services due him by the party of the first part have been paid and satisfied and that no claim of any nature will hereinafter be made by him against the said party of the first part for any reason or purpose, except bills for equipment purchased by second party and delivered to first party of a presently undetermined amount, for which payment has not been made by said first party, but in no event shall said bills exceed the sum of $1000.00.

Party of the second part hereby resigns as an officer of Radio Kentucky, Inc. upon the execution of this agreement, but shall be retained for technical purposes in an advisory capacity at a monthly salary beginning October 1, 1952 of 50% of that received prior to the execution of this agreement, said employment and salary to terminate December 31, 1952.

It is further agreed between the parties hereto that this agreement is made subject to the approval of the Federal Communication Commission and should said Commission fail to approve this agreement as hereinabove outlined, then this agreement shall become null and void and all parties hereto shall be returned to all positions they held before the entering into of this agreement.

It is further agreed between the parties hereto that if the party of the first part herein should default in the payment of any of the obligations hereunder and said default continue unsatisfied for a period of thirty days, then and in that event, the first party may elect:

(1) To declare this agreement null and void and shall return to the party of the first part all sums received by him or paid by the party of the first part for the benefit of the party of the second part, upon the return of which and the return of any obligations of the party of the first part still remaining unsatisfied, said party of the second part shall receive from the party of the first part 314

shares of preferred stock and 917 shares of common stock of Radio Kentucky, Inc., or

(2) The party of the second part in lieu of the above may elect to accept common stock of Radio Kentucky, Inc., at a valuation basis of $48.30 per share, the number of shares to be determined by dividing the then unpaid balance owing by the party of the first part under this contract by $48.30.

If any obligations hereunder remaining in default for a period of thirty days without a subsequent agreement being reached between the parties hereto regarding said default, then and in that event the party of the second part shall give notice unto the party of the first part, which one of the two options set forth above he intends to exercise, therein giving the party of the first part fifteen additional days to correct the default.

Charles and Emmalou Barham wrote to Sandford and Weldon on September 18, 1952, acknowledging the sales agreement between the petitioner and Radio Kentucky, Inc., and further acknowledging a new agreement between the Barhams and Radio Kentucky, Inc., with respect to the payment of petitioner's obligation under the loan and pledge agreement of November 10, 1951. The letter reads as follows:

We have been advised that you have agreed to purchase the stock of S. A. Cisler, Jr., in Radio Kentucky, Inc., which we are now holding as collateral to secure a loan of $25,000.00, the terms and conditions of which are fully set out in an agreement, dated November 10, 1951, between S. A. Cisler, Jr., designated as the Borrower, F. Eugene Sandford and Edwin S. Weldon, designated as the Stockholders and the undersigned, designated as the Lenders. The balance on the note as of this date being $20,000.00.

We further understand that Radio Kentucky, Inc., assumed and agreed to pay $20,000.00 of this loan and that Mr. Cisler is to pay $500.00 together with all interest up to the date of payment. We further understand that the $20,000.00 assumed by Radio Kentucky, Inc., will be payable as follows: $1000.00 on or before October 15, 1952; $1000.00 on or before November 15, 1952; $1000.00 on or before December 15, 1952; $1000.00 on or before January 14, 1953 and the balance of $16,000.00 on or before February 15, 1953.

We further agree that all other conditions made a part of the original agreement with Mr. Cisler and any changes made subsequent thereto, will remain the obligation of Mr. S. A. Cisler, Jr. and shall not in any way become the obligation of Radio Kentucky, Inc.

We further agree, that upon the receipt of payment of this note in full, to return 917 shares of common stock of Radio Kentucky, Inc. to you, and we, also, agree to notify you should Mr. Cisler fail in the payment of the $500.00 mentioned above or any installment of interest when due.

We further understand that this entire agreement is made subject to Federal Communication Commission approval, and in the event said Commission fails to approve the sale of this stock by S. A. Cisler, Jr., to you, then and in that event, your purchase agreement with Mr. Cisler shall be null and void; and that you will not assume the payment of our loan of $20,000.00 and that you will be restored to your present position; that all terms and conditions mentioned in the agreement between S. A. Cisler, Jr., you and the undersigned, under date of November 10, 1951, above mentioned, shall remain the same; and that Radio Kentucky, Inc., shall in no wise be liable on our said note.

On September 18, 1952, pursuant to the terms of the contract entered into on that date, Radio Kentucky, Inc., canceled certain indebtedness due from the petitioner in the amount of $13,663.53 and on the same day paid to the petitioner cash in the amount of $2,036.47. In addition, Radio Kentucky, Inc., assumed the petitioner's indebtedness to Charles and Emmalou Barham upon which there was an unpaid balance of $20,000. Radio Kentucky, Inc., made the following payments to the Barhams:

| | |
|---|---|
| Nov. 15, 1952 | $2,000 |
| Dec. 15, 1952 | 1,000 |
| Jan. 15, 1953 | 1,000 |
| Feb. 15, 1953 | 16,000 |

On November 12, 1952, the transfer of the common stock held by the petitioner in Radio Kentucky, Inc., was approved by the Federal Communications Commission provided the transfer could be accomplished within 30 days. On November 25, 1952, the President of Radio Kentucky, Inc., wrote to the Federal Communications Commission stating that it would not be possible to accomplish the transfer within 30 days and requested an extension of time until February 15, 1953. The Federal Communications Commission granted the extension of time requested.

On November 17, 1952, Radio Kentucky, Inc., paid to the petitioner the amount of $8,000 in cash.

On January 12, 1953, Radio Kentucky, Inc., paid the petitioner the entire amount of $15,300 due under the agreement of September 18, 1952. The actual obligation under the terms of the agreement would have required the payment of $16,300; however, the petitioner discounted the obligation in the amount of $1,000 as a premium for early payment.

It is clear from the statute that a casual sale of personal property cannot be reported on the installment method if the payments in the year of sale exceed 30 percent of the selling price. This is a basic requirement calling for a determination of fact. Thus, the issue in the instant case is factual and the only evidence contained in the record from which the intention of the parties can be determined is the sales contract of September 18, 1952.

Petitioner contends that the contract constituted two separate sales. He says that since the sale of the common stock required the prior approval of the Federal Communications Commission, the sale of the preferred stock can be severed from the sale of the common and, therefore, the gain on each class of stock should be computed separately.

In support of this contention the petitioner points out that the sales price of the preferred stock is ascertainable from the contract

itself, which amount ($15,700) exactly equals the amounts paid and credited to petitioner on the date of the contract and also equals petitioner's adjusted cost basis for the preferred stock. Hence, the petitioner concludes that the agreed sales price of the common stock was $44,300 and was paid for in the following manner:

| | |
|---|---:|
| Nov. 17, 1952 | $8, 000 |
| Nov. 15, 1952 | 2, 000 |
| Dec. 15, 1952 | 1, 000 |
| Jan. 15, 1953 | 1, 000 |
| Feb. 15, 1953 | 16, 000 |
| Jan. 12, 1953 | 15, 300 |
| | 43, 300 |

(The difference of $1,000 represents the discount for early payment.)

Under petitioner's computation he would have received $11,000 in 1952 which is less than 30 percent of the asserted $44,300 sales price of the common stock and, therefore, the gain would qualify for the installment treatment provided for by the statute.

On the other hand, the respondent asserts that the sales contract contemplated a single sale of both classes of stock at a single nondivisible price of $60,000, which was paid in the following manner:

| | |
|---|---:|
| September 18, 1952: | |
| Cancellation of petitioner's obligation to purchaser | $13, 663. 53 |
| Cash | 2, 036. 47 |
| | 15, 700. 00 |
| November 17, 1952: | |
| Assumption of Barham note | 20, 000. 00 |
| Cash | 8, 000. 00 |
| | 43, 700. 00 |
| January 12, 1953: | |
| Cash | [1] 15, 300. 00 |
| | 59, 000. 00 |

[1] $1,000 discount for early payment.

From respondent's computation the petitioner received $23,700, exclusive of the assumption of the $20,000 Barham note. This amount exceeds 30 percent of the $60.000 sales price if both classes of stock were sold in a single transaction. If not, the respondent argues alternatively that the petitioner received $28,000 in 1952 on the sale of the common stock valued at $44,300.

While we disagree with petitioner's contention that there were two separate sales instead of one sale of both classes of stock, we find it unnecessary to decide this question for two reasons: First, since the petitioner paid $15,700 for the 314 shares of preferred stock and sold them for the same amount, there was no gain or loss. Second, even

if the sales of the preferred and common stock are severable, we think the petitioner still cannot use the installment method because he received in the year 1952 more than 30 percent of the computable sales price of the common stock.

In addition to the $8,000 cash payment received by the petitioner on November 17, 1952, Radio Kentucky, Inc., assumed petitioner's obligation to the Barhams to the extent of $20,000.

Other "property" received by the petitioner from Radio Kentucky, Inc., as a payment during 1952 must be included in the "initial payments." Sec. 39.44–2, Regs. 118, *J. W. Elmore*, 15 B.T.A. 1210 (1929). We therefore reach the crucial question: Was the assumption of the indebtedness to the Barhams by Radio Kentucky, Inc., such "property" to be included in the sales price the same as cash? We believe it was. Certainly it was one of the chief considerations for the sale. It was not a promise to pay the petitioner, but a promise to petitioner to pay his indebtedness to the Barhams. Its effect was to relieve the petitioner of any direct liability. Moreover, the terms of the note were changed. Petitioner was required under the Barham agreement to make monthly payments of $1,000 and also to pay over a percentage of the profits from Bay Radio, Inc., until the loan was repaid. But, in assuming the obligation, Radio Kentucky, Inc., agreed to repay the loan at the rate of $1,000 per month for 4 months and then make a final payment of $16,000 5 months after the date of the contract. This materially altered the agreement between the petitioner and the Barhams. The new agreement probably constituted a novation whereby the existing obligation was extinguished and a new one substituted in its place. But, in any event, we know that the Barham obligation was assumed by Radio Kentucky, Inc. Debts of the seller assumed by the purchaser have been treated as a part of the "initial payments" in the same way as mortgages. *J. W. McWilliams*, 15 B.T.A. 329 (1929); and cf. *Caldwell* v. *United States*, 114 F. 2d 995 (C.A. 3, 1940); *M. F. Freeman*, 36 T.C. 779 (1961).

Petitioner also argues that there is no practical difference between the assumption by Radio Kentucky, Inc., of petitioner's indebtedness to the Barhams and the giving of its own notes to the petitioner in the same amounts and with the same maturity dates. We disagree. We must concern ourselves not with what could have been done but with what actually was done. The petitioner fashioned the mold of this transaction.

Respondent's regulation (sec. 39.44–2, Regs. 118) provides that in the sale of mortgaged property, whether the property is merely taken subject to the mortgage or the mortgage is assumed by the purchaser, the mortgage shall be included as part of the "selling price." But to the extent the mortgage does not exceed the basis to the vendor of

the property, it shall not be considered as part of the "initial payments" as that term is used in the statute. This section also applies to the casual sale of personal property.

Both the petitioner and the respondent agree that I.T. 2468, VIII–1 C.B. 159, is applicable. It holds that the amount of a mortgage on the property sold is not includable as part of the "initial payments," *to the extent it does not exceed the basis to the vendor of the property sold*, and an indebtedness of the vendor of stock, for which the stock has been pledged, is similar enough to a mortgage to fall within the rule. The significance of this principle, as applied to the facts here, is that the petitioner had no basis in the common stock. Consequently, even under the petitioner's theory, the indebtedness due thereon ($20,-000) and assumed by Radio Kentucky, Inc., would be includable as part of the "initial payments," thereby causing the amount to exceed the 30 percent minimum required by the statute. Precisely the same result was reached in *Metropolitan Property Corporation*, 24 B.T.A. 220 (1931), and in *Lucas* v. *Schneider*, 47 F. 2d 1006 (C.A. 6, 1931), certiorari denied 284 U.S. 622 (1931).

It is likewise well established that payments are not necessarily limited to those actually received in the year of sale but also include payments constructively received. *McInerney* v. *Commissioner*, 82 F. 2d 665 (C.A. 6, 1936), affirming 29 B.T.A. 1; *Minnie R. Ebner*, 26 T.C. 962 (1956).

Accordingly, we hold that the petitioner is not entitled to use the installment basis for reporting the gain on the sale of his common stock in Radio Kentucky, Inc.

In view of the concession made by petitioners, they are liable for the addition to tax under section 294(d) (1) (A) of the Internal Revenue Code of 1939 for the year 1952.

*Decision will be entered for the respondent.*