JOHN L. CONNELL and KETNA S. CONNELL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Connell v. Commissioner
Docket No. 10233-78.
United States Tax Court
T.C. Memo 1981-370; 1981 Tax Ct. Memo LEXIS 371; 42 T.C.M. (CCH) 423; T.C.M. (RIA) 81370; July 20, 1981
*371 Petitioner sold his 51-percent interest in a trailer park to Deen and reported the sale on the installment method as prescribed in sec. 453, I.R.C. 1954. As part of the consideration for such sale, Deen executed a $ 230,000 note in petitioner's favor. Prior to this sale, petitioner had been indebted to Deen on a $ 200,000 note which originally arose as part of an independent sales transaction. Both petitioner and Deen pledged the amounts due them under their respective notes as an additional source of payment to satisfy their obligations under each of the notes. Held, the mutual notes between petitioner and Deed were independent and did not, in substance, offset each other. Held further, petitioner did not receive payments in the year of sale in excess of 30 percent of the selling price of his interest in the trailer park. Held further, petitioner was entitled to report his gain on the sale on the installment method under sec. 453, I.R.C. 1954. D. L. Middlebrooks, James L. Cooney, Jr., and E. Gary Work, Jr., for the petitioners. Thomas K. Purcell, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: By notice of deficiency dated June 6, 1978, *372 respondent determined a deficiency of $ 62,282.48 in petitioners' Federal income taxes for their 1974 tax year. The sole issue for our determination is whether the petitioners, in the year of sale, received payments in excess of 30 percent of the selling price of Prairie View Mobile Village, thereby disqualifying the sale from installment sales treatment under section 453, I.R.C. 1954. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitoners John L. Connell and Ketna S. Connell, husband and wife, resided in Gainesville, Florida at the time the petition herein was filed. A timely joint Federal income tax return for the calendar year 1974 was filed by petitioners with the Internal Revenue Service Center, Chamblee, Georgia. Ketna S. Connell is a party herein solely by virtue of her filing a joint return with John L. Connell (hereinafter petitioner). On December 22, 1971, John D. Deen entered into a contract to purchase certain real estate from Lovette Jackson and Dorothy M. Jackson. This contract, as amended, provided that the purchase of *373 the Jackson real estate would be closed by January 15, 1974. The contract also provided for an option to purchase additional real estate, such option expiring on January 15, 1977. Thereafter, on June 4, 1973, petitioner and Billy A. Myrick entered into an agreement (Agreement) ith Deen whereby they agreed to pay Deen $ 500,000 in exchange for Deen's assignment to them of his rights and interest in the December 22, 1971 contract. As part payment of the purchase price to Deen, petitioner and Myrick executed a promissory note dated June 4, 1973 and payable to Deen in the face amount of $ 400,000, bearing an interest rate of 8 percent per annum. The note was payable in eight equal annual installments of $ 50,000 plus accrued interest, commencing on June 5, 1974 and continuing on June 5 of each succeeding year until fully paid. The note also incorporated by reference all the terms and conditions of the Agreement. In addition to the payment terms, the Agreement provided in pertinent part as follows: 5. In the event CONNELL and MYRICK default in the performance of any of the conditions of this Agreement, including the payment of all monies due on or before the due dates, the Assignment *374 as contemplated herein shall become null and void and of no further force or effect and DEEN shall have the sole right to perform the Contract for Sale and Purchase free and clear of all rights of CONNELL and MYRICK. In this event or in the event CONNELL and MYRICK fail to perform the Contract for Sale and Purchase for any reason, other than one caused by DEEN, it is expressly agreed that the total consideration of $ 500,000.00 is to be paid according to the required terms and there shall be no reduction in the said required $ 500,000.00 payment due to the fact that DEEN may perform the Contract for Sale and Purchase or the fact that CONNELL and MYRICK may fail to perform the Contract for Sale and Purchase. 7. CONNELL and MYRICK hereby waive any and all objections to the terms and conditions of the Contract for Sale and Purchase and any all [sic] objections to the state of the title to the subject property, other than those which may have been caused by DEEN, arising prior to December 22, 1971, and, notwithstanding any possible further objections to the conditions of the Contract for Sale and Purchase, other than objections to the state of the title arising subsequent to December *375 22, 1971, CONNELL and MYRICK expressly agree to perform the obligations contained herein. In the event of defect in title arising subsequent to December 22, 1971, caused by any party other than CONNELL and MYRICK, and, upon such defect being unable to be cured according to the terms of the Contract for Sale and Purchase, CONNELL and MYRICK shall be entitled, at their sole option, to return of all monies paid herewith and a cancellation of all rights and obligations contained herein. 10. In the event CONNELL and MYRICK close the transaction as contemplated by the Contract for Sale and Purchase, at the closing of the said sale, CONNELL and MYRICK hereby agree to execute a mortgage to DEEN for the purpose of securing the prompt and full payment of the said $ 400,000.00 promissory note. The mortgage shall be a lien upon all of the property purchased by CONNELL and MYRICK * * *. 11. In the event CONNELL and MYRICK sell any portion of the property as contemplated by the Contract for Sale and Purchase, including all property under option and including all property released by DEEN, or, in the event CONNELL and MYRICK assign any options contained in the said Contract for Sale and Purchase, *376 it is agreed that all monies received by CONNELL and MYRICK shall be applied in the following order of priority: A. First to the reasonable costs of sale, including a real estate commission, B. Second to the reimbursement to CONNELL and MYRICK of the principal amount of all payments made to the seller and to DEEN, C. Third to DEEN as a credit on the said $ 400,000.00 promissory note and D. After said promissory note is paid in full, all remaining payments shall be the property of CONNELL and MYRICK. Any purchase money mortgages received by CONNELL and MYRICK from the purchaser as security for the unpaid balance shall be assigned to DEEN as collateral security for the payment of the said $ 400,000.00 promissory note. Several months after the above assignment was executed, Deen approached petitioner in the hopes of purchasing the Prairie View Mobile Home Village (Prairie View), then owned by petitioner (51 percent) and John B. Morgan (49 percent). As the due date of the first payment on the note from petitioner and Myrick to Deen approached and the management of Prairie View became more difficult, [1] petitioner and Morgan decided to sell Prairie View to Deen. To this end, on March *377 13, 1974 petitioner and Morgan individually sold their interests in Prairie View to Deen and John C. Morris for a total purchase price of $ 1,097,946.95. Petitioner's share of the purchase price was $ 604,452.94, consisting of $ 95,000 in cash received at the closing, a promissory note executed by Deen in the amount of $ 230,000 and the assumption by the purchaser of petitioner's $ 279,452.94 share of a mortgage to the First Federal Savings and Loan Association with an outstanding balance of $ 547,946.95. The unsecured promissory note in the principal amount of $ 230,000 was payable in eight equal annual installments of $ 28,750 plus accrued interest at 8 1/4 percent per annum, commencing on March 13, 1975 and continuing on March 13 of each succeeding year until fully paid. This note had the following typewritten legend on its reverse side: NOTICE
TO WHOM IT MAY CONCERN: You will take notice that I have irrevocably pledged any and all payments that are due to me or any of my legal successors or assigns, as owner of the foregoing Note, as an additional source of payment of the *378 amounts owed by me under my Promissory Note dated June 4, 1973, in the original amount of $ 200,000.00, and any person, firm or corporation acquiring this Note by Assignment or operation of law, will do so with full knowledge of this Pledge of the receipts from the Note on the reverse side to full payment of said $ 200,000.00 insofar as the monies due thereunder will suffice. Dated: 13th day of March, 1974. /s/ John L. Connell / JOHN L. CONNELL The basis of petitioner's interest in Prairie View was $ 240,065.86. Consequently, the excess of the mortgage assumed over such basis, includable as a payment in the year of sale, was $ 39,387.08. On June 3, 1974, the $ 400,000 note payable to Deen and jointly executed by petitioner and Myrick was cancelled and replaced by two individual notes in the face amount of $ 200,000 each which were executed separately by petitioner any Myrick. The primary reason for this division was to improve the appearance of petitioner's and Myrick's financial statements and thereby more readily enable each to obtain or maintain outside financing for their separate businesses. [2] *379 The new note executed by petitioner provided that it was executed as a modification and clarification of the $ 400,000 note. Further, petitioner's note bore the date June 4, 1974, called for accrued interest to be paid through March 13, 1974 and was thereafter payable in eight equal annual installments of $ 25,000 plus accrued interest at 8 percent per annum, commencing on March 13, 1975 and continuing on March 13 of each succeeding year until fully paid. This note also had the following typewritten legend on the reverse side of the note: NOTICE
TO WHOM IT MAY CONCERN: You will take notice that I have irrevocably pledged any and all payments that are due to me or any of my legal successors or assigns as owner of the foregoing Note, as an additional *380 source of payment of the amounts owed by me under my Promissory Note dated March 13, 1974, in the original amount of $ 230,000.00, and any person, firm, or corporation acquiring this Note by Assignment or operation of law, will do so with full knowledge of this Pledge of the receipts from the Note on the reverse side to full payment of said $ 230,000.00 insofar as the monies due thereunder will suffice. Dated: 13th day of March, 1974. /s/ John David Deen / JOHN DAVID DEEN The notice on the note from Deen to petitioner was placed there on the closing date of the Prairie View sale pursuant to the advice of counsel, [3] *381 in order to destroy its negotiability and to prevent anyone from acquiring the note as a bona fide purchaser for value. The notice on the note from petitioner to Deen was placed there at the request of petitioner after he executed a similar pledge of the payments due under the note from Deen to petitioner. While the parties agreed to execute these pledges for the aforementioned reasons, they never discussed the possibility of structuring the transaction in a manner that would cancel or offset these notes. On March 13, 1975, the due date for the first payment on both notes, petitioner went to Deen's house ready and willing to tender payment according to the terms of his instrument. However, Deen suggested that only one check from Deen to petitioner was necessary. Accordingly, on that date, Deen made a payment to petitioner of $ 3,750, which represented the difference between Deen's principal payment of $ 28,750 and petitioner's principal payment of $ 25,000. In addition, the parties gave each other a credit for a principal payment of $ 25,000 and for interest due under the notes. [4] The balance due petitioner after the March 31, 1975 transaction was $ 201,250. Deen died in 1975 shortly after the aforementioned payment. Petitioner filed a claim against the Estate of Deen with respect to the $ 230,000 promissory note executed *382 by Deen. In addition, petitioner's claim asserted a vendor's lien on the Prairie View property, which lien was established on December 1, 1975 by order of the Circuit Court of Florida, Eighth Judicial Circuit, in and for Alachua County, Florida. On December 3, 1975, petitioner agreed to release his lien on the Prairie View property in exchange for an advance principal payment from the estate of $ 20,000 plus accrued interest. In March 1976, pursuant to a court order reflecting an agreement between petitioner and Deen's executor, the claim of petitioner against the estate and the claim of the estate against petitioner regarding the $ 200,000 promissory note were compromised by way of offset. The offset resulted in petitioner making a payment to the estate in the amount of $ 3,907.28, representing the amount of principal and accrued interest owed the estate in excess of the principal and interest owed petitioner by the estate. On his Federal income tax return for his 1974 taxable year petitioner made a timely election to report the sale of his interest in Prairie View on the installment method of accounting prescribed by section 453. Respondent, in his statutory notice of deficiency, *383 determined that petitioner received payments in excess of 30 percent of the selling price in the year of sale by operation of a setoff of mutual debts between petitioner and Deen, thereby disqualifying such sale from installment sale treatment. OPINION As a general rule, gain from the sale or other disposition of property is the excess of the amount realized over the adjusted basis of the property. Section 1001(a). [5] Such gain is generally included in the taxpayer's computation of taxable income according to his normal accounting method. Section 446(a).[6] However, in certain circumstances section 453[7] *385 provides for the reporting of income on the installment method. For instance, in the case of sales of realty and casual sales of personalty a taxpayer may report income on the installment method if he disposes of property and the payments received in the taxable year of sale, if any, do not exceed 30 percent of the selling price. Section 453(b)(2)(A)(ii); Pozzi v. Commissioner, 49 T.C. 119, 127 (1967). The purpose of section 453 is to provide relief for the taxpayer by matching the payment of the tax with the receipt of the sales proceeds. Commissioner v. South Texas Lumber Co., 333 U.S. 496, 503 (1948). *384 Being a relief provision and an exception to the general rule with respect to the year for reporting income, section 453 must be strictly construed. Cappel House Furnishing Co. v. United States, 244 F.2d 525, 529 (6th Cir. 1957). With respect to the 30 percent limitation, the amount considered received by a taxpayer in the year of the installment sale is computed by taking into account *386 payments constructively as well as actually received. Williams v. United States, 219 F.2d 523, 527 (5th Cir. 1955); Cisler v. Commissioner, 39 T.C. 458, 466 (1962); McInerney v. Commissioner, 29 B.T.A. 1, 6 (1933), affd. 82 F.2d 665 (6th Cir. 1936). The receipt by a seller of a purchaser's evidence of indebtedness (e.g., installment note) does not constitute payment in the year of sale. Section 453(b)(2)(A)(ii). Furthermore, securing a purchaser's indebtedness with collateral, a pledge or otherwise, does not transform the debt into a completed payment. Sprague v. United States, 627 F.2d 1044, 1048 (10th Cir. 1980). It has long been settled that secured notes stand on the same plane as unsecured notes for purposes of the installment sale limitation on year-of-sale payments. R.L. Brown Coal & Coke Co. v. Commissioner, 14 B.T.A. 609 (1928). Both are mere promises to pay. * * * The giving of security * * * merely makes the promise more certain of fulfillment. See Williams v. Commissioner, 429 U.S. 569, 578, 97 S. Ct. 850, 856, 51 L. Ed.2d 48 (1977). [Fn. omitted. 627 F.2d at 1047-1048.] On the other hand, cancellation or reduction of a seller's indebtedness to a purchaser as partial *387 consideration in an installment sale is included in determining year-of-sale payments. Sprague v. United States, supra at 1050; United States v. Ingalls, 399 F.2d 143, 145-146 (5th Cir. 1968), cert. denied 393 U.S. 1094 (1969); Riss v. Commissioner, 368 F.2d 965, 968-969 (10th Cir. 1966), affg. a Memorandum Opinion of this Court. However, mutual or cross debts between a seller and purchaser do not automatically cancel or reduce each other. Bailey v. Commissioner, 103 F.2d 448, 449 (5th Cir. 1939), affg. a Memorandum Opinion of this Court; Rickey v. Commissioner, 54 T.C. 680, 695 (1970), affd. 502 F.2d 748 (9th Cir. 1974). To the extent that a cancellation, in substance, has occurred at the time of sale, the amount of the indebtedness cancelled must be included in computing year-of-sale payments. See United States v. Ingalls, supra at 145-146. As the Supreme Court stated in Commissioner v. Court Holding Co., 324 U.S. 331, 334 (1945): The incidence of taxation depends upon the substance of the transaction. * * * To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration *388 of the tax policies of Congress. It follows, as this and other courts have recognized, that substance, and not form, will determine whether a transaction qualifies for installment sale treatment; an arrangement lacking reality will not be given effect. Griffiths v. Commissioner, 308 U.S. 355, 357-358 (1939); United States v. Ingalls, supra at 145; Pozzi v. Commissioner, supra at 127. We therefore must examine the particular transaction at issue to determine whether the form chosen by the parties reflects the substance of what was accomplished. The resolution of the question of whether the substance of a transaction is in conformity with its form necessarily depends on the facts and circumstances of each particular case. Sprague v. United States, supra at 1049. The burden of proving that the substance and form of the transaction herein are congruent lies with petitioner. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering, 290 U.S. 111 (1933). For the most part, the facts in the instant case are undisputed. Prior to the transaction involved herein, petitioner was jointly liable with another individual on a $ 400,000 note payable to Deen. The transaction *389 upon which this case is based involved the March 13, 1974 sale of Prairie View, owned jointly by petitioner and Morgan, to Deen and Morris. In part payment of the purchase price, Deen individually executed a note payable to petitioner in the amount of $ 230,000 with interest at 8 1/4 percent per annum. That note was payable in eight equal annual installments of $ 28,750 plus accrued interest, such payments commencing on March 13, 1975 and continuing on March 13 of each succeeding year until fully paid. In order to destroy its negotiability, the note contained on its back a pledge by petitioner of payments due under that note as an "additional source of payment" for amounts owed by petitioner to Deen under a second note. Contemporaneous with the closing of the transaction in question, the $ 400,000 note was cancelled and replaced by two individual notes in the face amount of $ 200,000 each, one executed by petitioner and one executed by the other party to the original note. Petitioner's note was payable in equal annual installments of $ 25,000 plus accrued interest at 8 percent per annum, payments commencing on March 13, 1975 and continuing on March 13 of each succeeding year until *390 fully paid. At the request of petitioner, that note contained on its back a pledge by Deen of the payments due under that note as an "additional source of payment" for amounts owed by Deen to petitioner under the $ 230,000 note. In his notice of deficiency, respondent determined that-- the mutual pledging of payments on notes receivable in the amounts of $ 230,000.00 and $ 200,000.00 by you and John D. Deen, respectively, constitutes a cancellation and payment of your debt to John D. Deen to the extent of $ 200,000.00, which disqualifies the installment sale of Prairie View Mobile Village reported by you on your 1974 return, since payments in the year of sale are in excess of 30% of selling price pursuant to section 453 of the Internal Revenue Code. * * * On brief, respondent theorizes that the doctrines of constructive receipt and substance over form dictate such a result. the gist of his theory is that petitioner, in substance, was relieved of his debt obligation to Deen by virtue of the transaction in question and therefore petitioner constructively received payments in the year of sale in excess of 30 percent of the selling price. Petitioner counters that the pledges did not *391 amount to a cancellation of the debts. Instead, claims petitioner, each pledge was intended merely as security for payment of the other note. Reasoning that the giving of security is not a year-of-sale payment for purposes of section 453, petitioner argues that he has not received payments in the year of sale exceeding 30 percent of the selling price of his interest in Prairie View. Our decision turns on the intent or motive of the parties; that is, whether the cross pledges were intended as a security arrangement or were intended effectively to cancel mutual indebtedness. See Sprague v. United States, supra at 1049; United States v. Ingalls, supra at 146; Newmark v. Commissioner, 311 F.2d 913, 915 (2d Cir. 1962), affg. a Memorandum Opinion of this Court; Griffith v. Commissioner, 73 T.C. 933, 943 (1980). Under the circumstances in the instant case, we are convinced that a security arrangement was intended. Evidence of the negotiations between the parties to the notes demonstrates that the pledges were not intended to affect an offset or cancellation of mutual debts. Rather, the idea of a pledge was introduced into the transaction solely on the initiative of Mr. Paul Carmichael, *392 Deen's attorney. Carmichael's expressed purpose for the pledge executed by petitioner was to destroy the negotiability of the subject note and to eliminate the possibility of a bona fide purchaser for value. The corresponding pledge by Deen first was requested by petitioner only after petitioner had executed his pledge. Further, the testimonies of petitioner and Carmichael indicate that the possibility of cross pledges and the debt relief that, in substance, might be construed to result therefrom were never discussed by the parties to the transaction; nor was there such an understanding between petitioner and Deen. In fact, a fair inference can be drawn that these pledges would not have seen the light of day absent Carmichael's last minute initiative. Truly, mutual pledges were not bargained for, but were the consequence of spur-of-the-moment thought. Therefore, we do not believe that the parties intended to cancel their mutual debts but instead intended to secure repayment by virtue of pledges. Respondent, however, argues that the Fifth Circuit's decision in United States v. Ingalls, supra, mandates a finding in his favor. The issue in that case was whether the compromise of *393 an employment contract claim was legally effective to defer income over the compromise period. The taxpayer was a shareholder in a family owned corporation. He entered into a long-term employment contract with this corporation. Prior to entering into the employment contract, the taxpayer had borrowed heavily from the corporation. A dispute arose among the shareholders with regard to the validity of the employment contract and the amount of the indebtedness owed by the taxpayer to the corporation. Negotiations between the opposing factions culminated in a contract settlement agreement. The Court of Appeals described the contract as follows: Under its terms the company purchased the employment contract for $ 228,360 payable in equal installments of $ 22,836 on February 1st of the ten next succeeding years and, in turn, taxpayer agreed to pay off his outstanding indebtedness to the company of $ 228,360 in equal installments of $ 22,836 on February 1st of the ten next succeeding years * * * the only security for the new note being taxpayer's promise to pay and the following provision: "[Taxpayer] * * * further agrees that so long as any part of said indebtedness or any interest thereon *394 remains unpaid, the company may make the payments hereinabove agreed to be paid to him by currently crediting said indebtedness with such payments as they accrue." [399 F.2d at 145.] Based on this contract, the court found that, in substance, the disputed employment contract claim was compromised by way of a forgiveness of indebtedness. The taxpayer was held to be in receipt of income equal to the discharged indebtedness in the year of compromise. The court recognized that mutual debts do not automatically cancel each other. However, the court went on to state that, under the circumstances presented, the formality of pleading the set-off would be the only barrier to cancellation of mutual debts contracted on the credit of each other. The agreement here eliminates even the formality of having to plead the set-off since by contract the parties agree that if the taxpayer fails to pay the company the company is authorized to effect a private setoff by making the bookkeeping entry mentioned above. The agreement speaks for itself and makes clear that the taxpayer had to perform no additional act for the debt to be discharged. A simple bookkeeping entry by the company each February 1st *395 was all that was necessary. The exchange of checks by the company and the taxpayer was thus an empty ritual acted out for the benefit of the Commissioner and, in reality, the taxpayer was discharged from his indebtedness * * *. [399 F.2d at 146.] In analogizing the Ingalls rationale to the present case, respondent argues that, to the extent of their mutual debts, petitioner and Deen were relieved of their continuing obligation to pay each other. Respondent claims that petitioner's obligation to pay on the original $ 400,000 note was extinguished when the new $ 200,000 notes were executed. Continuing his line of reasoning, respondent claims that the execution of new notes in conjunction with the subject cross pledges proves that petitioner's $ 200,000 note and Deen's $ 230,000 note were mutual debts contracted on the credit of each other. Respondent insists that at the time of the sale the transaction was essentially complete in that petitioner and Deen had shed all tangible obligations to each other, leaving only a hollow annual ritual of exchanging checks and/or credits. Respondent posits that nothing further needed to be done other than to plead the setoff, an unnecessary formality *396 under Ingalls. Respondents concludes that petitioner effectively was discharged of his debt obligation to Deen by virtue of the transaction described herein and therefore received payments in the year of sale in excess of 30 percent of the selling price. While we consider the legal and factual analysis in Ingalls to be applicable to the case at bar, we do not believe that Ingalls favors a decision for respondent herein. At first blush, there are some immediately recognizable differences between Ingalls and the present case. Contrary to Ingalls, the face amounts and interest rates on the notes between petitioner and Deen differed. In addition, Ingalls involved a settlement agreement (one document) reached by the parties which provided that their opposing obligations would be used as offsets against each other through their bookkeeping system. In the instant case, on the other hand, no automatic offset was authorized or intended by the parties. Instead, as we have previously found, the cross pledges were in the nature of security for a default in payment. Beyond these differences, the key factor distinguishing the cases relates to the independence of the debts. In Ingalls, the *397 opposing parties intended to compromise disputed claims and did so by way of a settlement agreement. It was clear that the agreement was intended to compromise mutual debts of equal amount. While the Ingalls court recognized that independent debts would not be set off, [8] *398 it went on to find that the parties' agreement effected a discharge of "mutual debts contracted on the credit of each other." 399 F.2d at 146. However, the present situation lacks similar characteristics. Indeed, the mutual debts between petitioner and Deen were independent of each other, arising out of separate and distinct transactions and involving differing rights and obligations. The original $ 400,000 note to Deen evidenced a portion of the Agreement whereby Deen assigned a contract right to petitioner and Myrick. The new $ 200,000 note, being an outgrowth of the original note, remained subject to the terms of the Agreement.For example, under Article 5, petitioner's failure to pay moneys when due would be a default in the performance of his obligations under the Agreement. In addition, petitioner and Myrick: (1) were obligated to execute a mortgage in Deen's favor upon purchasing certain property pursuant to contract rights assigned from Deen (Article 10) and (2) were required under certain circumstances to transfer funds to Deen in satisfaction of their debt in the event the aforementioned property was sold (Article 11). Furthermore, in the *399 event of a defect in title to such property arising after December 22, 1971, petitioner and Myrick had the option of cancelling all rights and obligations under the Agreement (Article 7). Moreover, the new $ 200,000 note was not specifically created in preparation for the installment sale and the resulting cross pledges. Rather, the primary motive for subdividing the $ 400,000 note was to improve the appearances of petitioner's and Myrick's financial statements for credit purposes.
The $ 230,000 note from Deen to petitioner was not subject to similar terms and was the creature of a separate sale.Based on the foregoing, we find that these mutual notes between petitioner and Deen were independent and should not be deemed to set off one another for Federal income tax purposes. Therefore, we hold that petitioner has not received payments, in the year of sale, in excess of 30 percent of the selling price of his interest in Prairie View and is entitled to report his gain on that sale on the installment method under section 453. Decision will be entered for the petitioner. Footnotes
1. Prairie View was a mobile home park catering to a rental contingent consisting mostly of college students.↩
2. Mr. Paul Carmichael, the attorney who represented Deen, testified that petitioner, Myrick and Deen each operated his own business, each of which to a large extent depended on credit. Obtaining and maintaining credit necessarily required the submission of individual financial statements to financial institutions. It was his understanding that the note was individualized into $ 200,000 subnotes so that "when they made the financial statement they wouldn't have to say they were jointly liable of [sic↩] a $ 400,000 note."
3. Mr. Carmichael testified that the notice was placed on this note at his direction and on his own initiative. In addition, he stated that the terminology used in the notice "was my language."
4. Although the record is not totally clear on this point, it appears that no adjustment was made for the difference in the interest due under the respective notes for the one-year period ending on March 13, 1975 (the payment date).↩
5. Sec. 1001(a) provides in pertinent part as follows: SEC. 1001. DETERMINATION OF AMOUNT OF AND RECOGNITION OF GAIN OR LOSS. (a) Computation of Gain or Loss.--The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis * * *. ↩
6. SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING. (a) General Rule.--Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books. ↩
7. Sec. 453 provides in pertinent part as follows: SEC. 453. INSTALLMENT METHOD. (a) Dealers in Personal Property.-- (1) In general.-- * * * a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price. (2) Total contract price.--For purposes of paragraph (1), the total contract price of all sales of personal property on the installment plan includes the amount of carrying charges or interest which is determined with respect to such sales and is added on the books of account of the seller to the established cash selling price of such property. * * * (b) Sales of Realty and Casual Sales of Personalty.-- (1) General rule.--Income from-- (A) a sale or other disposition of real property, or (B) a casual sale or other casual disposition of personal property * * * for a price exceeding $ 1,000, may (under regulations prescribed by the Secretary or his delegate) be returned on the basis and in the manner prescribed in subsection (a). (2) Limitation.--Paragraph (1) shall apply-- (A) * * * only if in the taxable year of the sale or other disposition-- (i) there are no payments, or (ii) the payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 percent of the selling price.↩
8. Similarly, in Big "D" Development Corp. v. Commissioner, T.C. Memo. 1971-148, affd. per curiam 453 F.2d 1365 (5th Cir. 1972), cert. denied 406 U.S. 945 (1972), this Court recognized that mutual debts would not be deemed cancelled where petitioner proved that the installment sale transaction and the corresponding debt from the buyer to the seller were independent of a second debt flowing from the seller to the buyer. In that case, the buyer was controlled by the seller. The mutual debts between the parties were periodically reduced by a series of bookkeeping entries. We found it significant that petitioner, in its discretion, had the power to effect an immediate offset of the mutual indebtedness by virtue of its position of control. Further, petitioner failed to prove the requisite independence. Accordingly, we found that the cross indebtedness was lacking in reality and therefore, petitioner was not entitled to installment sale treatment.